748 A.2d 150 (2000)
329 N.J. Super. 447
Eric YUEH, Plaintiff-Respondent,
v.
Jean YUEH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2000.
Decided April 4, 2000.
*151 Cary B. Cheifetz, Livingston, for defendant-appellant (Ceconi & Cheifetz, attorneys; Mr. Cheifetz, on the brief).
Louis J. Lamatina, Paramus, for plaintiff-respondent.
Before Judges PETRELLA, BRAITHWAITE and COBURN.
The opinion of the Court was delivered by PETRELLA, P.J.A.D.
The main thrust of this appeal, in a post-judgment matrimonial setting, is defendant Jean Yueh's challenge to the award of $131,442.45 in counsel fees to plaintiff Eric Yueh out of his requested fee of $174,319.64. The judge reduced defendant's attorney's request by $42,877.19, the amount the judge attributed to plaintiff's "avoidance of discovery." Nevertheless, the fee awarded is still troublesome not only because of its magnitude, but also because it deals only with post-judgment matters of discovery relating to interpretation and application of short provisions in the parties' Property Settlement Agreement (PSA), which were eventually resolved by summary judgment. Our analysis of the record makes clear that defendant's discovery request was resisted throughout by the plaintiff, resulting in unnecessary and unduly prolonged resolution of relatively simple legal issues.
Defendant's brief on appeal[1] argues that the Family Part Judge abused his discretion in assessing counsel fees against her; ignored plaintiff's bad faith; failed to consider plaintiff's ability to pay his own counsel fees; and erred in failing to order a plenary hearing because of fact issues on plaintiff's changed circumstances claim. At oral argument counsel asserted that defendant's position also included a challenge *152 to the reasonableness of the fee award. Defendant's attorney represented that the reason that no opposition papers were submitted in the trial court to challenge the reasonableness of the fees requested was because the judge ordered simultaneous submissions with respect to the issues, including certifications as to counsel fees requested, and directed that no further papers be filed.
Defendant also argues on appeal that the Family Part Judge made no findings of fact and conclusions of law explaining his decision relieving plaintiff of his obligation to maintain medical insurance, pay unreimbursed medical expenses and maintain life insurance for defendant.
The thirty-two-year marriage of the parties ended by divorce on October 30, 1991. Plaintiff was then age fifty-eight. The divorce judgment incorporated a PSA by which plaintiff, former husband, agreed to pay defendant, former wife, $4,333.33 per month in alimony, and specifically provided:
The husband's bona fide retirement (age 62) is a basis for husband's application to modify alimony. If the husband's income from employment and the portion of his pension benefits not subject to distribution is $20,000.00 per year or less, alimony will terminate. Income, defined as salary plus the portion of his pension benefit earned after the filing of the Complaint, above $20,000.00 will be considered by the court on the quantum, if any, of alimony.
Under the PSA, plaintiff was also to pay defendant's medical insurance up to a maximum of $3,000 per year and unreimbursed medical expenses up to $1,000 per year. The PSA provided: "Husband may deduct one-half of monies expended for the insurance premium and unreimbursed medical expenses as alimony."
In 1992, plaintiff remarried. On August 1, 1996, he retired to Florida from his employment with IBM, apparently voluntarily, at age sixty-three. About two weeks thereafter he filed a post-judgment motion to eliminate or modify his alimony obligation and his medical insurance and reimbursement obligation under the PSA. Time records submitted in the trial court by plaintiff's attorney show that discussions between plaintiff and his attorney about the implications of retirement and a post-judgment modification motion started at least as early as January 1996.[2]
In connection with his modification motion plaintiff certified that his monthly pension benefit was $3,268.50 or $39,222 per year. The difference between the pension plaintiff was entitled to at the time of his divorce and the amount he earned as a result of further service was $1,175.23 per month or $14,102.76 per year. Plaintiff claimed he had no other "income from employment"[3] and his "earned income" plus the "excess" pension payment was less than $20,000. Accordingly, he moved to terminate alimony.
In response to plaintiff's motion, defendant cross-moved for an order declaring plaintiff in violation of litigant's rights for failure to comply with the alimony provisions of the PSA, and directing plaintiff to provide copies of his federal and state tax returns for 1994 and 1995. On the return day of the motion, the judge ordered plaintiff *153 to submit to a deposition to determine if he had any additional income. The order stated that if plaintiff had additional income he was to pay defendant's counsel fees, but if it was established that he did not then his ex-wife would pay his attorney's fees. It is unclear why such a provision was necessary when the judge could resolve any fee issues at the appropriate time, and it could serve to chill reasonable inquiry.[4] We note that the September 27, 1996 order did not even say "reasonable attorney's fees" although clearly that limitation should be implicit and would apply as a matter of law. The merits of the motion were not addressed and the hearing was adjourned.[5]
Plaintiff's deposition was taken on October 29, 1996. He avoided or resisted answering many questions. He even filed a motion for a protective order concerning certain documents and information requested concerning the finances of Mary Strain, whom plaintiff had married in 1992, regarding a business plaintiff claimed his new wife owned. Defendant cross-moved to dismiss plaintiff's previous motion to terminate support based on his failure to produce documentation in response to her notice to produce.
The judge ordered that plaintiff's wife supply her 1994 and 1995 tax returns and other court-ordered documents for review in camera.[6] The judge also entered three orders on April 30, 1997: (1) he denied, without prejudice, plaintiff's request for a protective order; (2) he directed plaintiff to furnish the court with additional documents in thirteen categories concerning his current wife (Strain); and (3) he appointed Leonard Schwartz as the court's accounting expert to report only to the court by June 30, 1997. A trial date was scheduled for September 1997.
Plaintiff asserted he supplied the documentation to the court. However, defendant asserted the required discovery had not been supplied. Due to plaintiff's failure to provide all of the documentation a conference call with the attorneys and the court-appointed accountant was necessitated. As a result, apparently after requesting briefs, on September 22, 1997, the judge signed an order in which he defined "`salary' as contemplated by the parties" in their PSA (even though neither that term nor "income from employment" were defined therein) as meaning:
[A]n ongoing employment situation for compensation where monies are received by a person on a fixed and continuous *154 basis, i.e., normally paid in regular periodic intervals in specific regular amounts or as commission.
The judge also directed plaintiff to "fully comply" with his April 30 order requiring production of documents and that plaintiff produce Strain for depositions. In an attached statement to his October 2, 1997 order denying plaintiff's request for a stay of the September 22 order, the judge said that plaintiff claimed in his deposition answers "that he could not produce relevant information requested by the defendant about his finances" and that his wife possessed the information. Plaintiff's application for a stay of the September 22, 1997 order was denied. The judge indicated that Strain's deposition was "necessary to discover whether the Plaintiff is using his current wife as a vehicle for hiding income from domestic and foreign sources."[7] Plaintiff's motion for leave to appeal to this court was denied.
Notwithstanding the court's April 30, 1997 order appointing an accounting expert, plaintiff moved on November 19, 1997, for the appointment of an "independent" fact finder (hired by plaintiff) to determine whether plaintiff was employed and drawing a "salary," and to hold defendant in violation of litigant's rights for failure to appear at a scheduled settlement conference for which defendant's attorney had already apologized for a calendaring error. Defendant cross-moved for an order (1) holding plaintiff in violation of litigant's rights for noncompliance with the prior order, and (2) denying plaintiff's original motion to terminate alimony. This resulted in a January 23, 1998 order compelling plaintiff to produce the documents previously ordered and to produce Strain for deposition within ten days. Failure to do so would result in denial of his motion to terminate alimony.
Plaintiff filed another motion on February 17, 1998, for a protective order to establish parameters for Strain's deposition. Defendant cross-moved on short notice to enforce the judge's January 23, 1998 order and obtain judgment against plaintiff for alimony arrears. In response, plaintiff filed three certifications. Defendant's reply certification generated a March 31, 1998 motion to compel defendant's deposition and to obtain a response to plaintiff's notice to produce. Plaintiff apparently felt it necessary to again respond to defendant's March 27 certification. After oral argument on April 9, the judge entered an April 22, 1998 order denying plaintiff's application for defendant's deposition and documents. The order again directed that Strain appear for her deposition and once again denied plaintiff's motion for a protective order concerning the deposition. It reaffirmed prior orders concerning the production of documents. It is clear that plaintiff in no event should have been allowed fees in connection with this type of motion or any protective order motion he initiated which was denied.
Not content with the rulings to date, plaintiff moved for reconsideration on May 4 of the April 22, 1998 order. Defendant filed a cross-motion for counsel fees. The judge's resultant May 29, 1998 order directed that plaintiff provide defendant with certain discovery, denied plaintiff's motion for reconsideration and reserved on "all fee applications."After Strain's deposition was taken on June 1 and 2, 1998, a case management conference was held on June 24. After objection to some of its proposed terms, a case management order prepared by plaintiff's attorney was executed on August 7, 1998, which somewhat incongruously required defendant to provide plaintiff with a letter specifically setting forth each document that defendant claimed she had not received from plaintiff or as a result of a subpoena to third parties. For documents not received, defendant was to prepare an *155 authorization to be executed by plaintiff. Plaintiff's attorney was also directed to write the Bank of China requesting plaintiff's records.
In the meantime, plaintiff moved for summary judgment on July 7, 1998, for essentially the relief already requested, i.e., termination of alimony and medical insurance obligations and compelling defendant to reimburse him for his attorney's fees. Defendant opposed the motion and plaintiff submitted a reply to the opposition. This flurry of activity appears to have been unnecessary in light of the course of the proceedings. Throughout this time defendant maintained that she had not been furnished proper discovery.
An August 7, 1988 order canceled an August 24 "trial" date and required the parties to submit all documents required under the case management order by August 28 so that the matter could be "decided on the papers." As noted, defendant asserts the filings were to be simultaneous, with no further submissions. Both sides submitted proposed findings and conclusions, along with certifications of respective legal services.
Based on the submitted papers, the judge issued his written "Opinion and Order" on December 2, 1998, which stated that "summary judgment is appropriate as a matter of law." He granted plaintiff's motion for summary judgment and relieved him of his obligation to pay alimony retroactive to his retirement date of August 1, 1996. He also terminated plaintiff's obligation to pay defendant's medical insurance and unreimbursed medical expenses and his obligation to provide life insurance; denied defendant's request for counsel fees; and ordered defendant to pay $131,442.45[8] of plaintiff's attorney's fees, after deducting $42,877.19 as the amount the judge attributed to plaintiff's delaying tactics. He also ordered defendant to reimburse plaintiff for $2,860 advanced to the accountant.

I.
It is clear from our review of this matter's history that there were excessive motions and excessive time spent on what should have been relatively routine discovery matters. Had plaintiff complied with court orders and the letter and spirit of the rules, almost all of the time billed by both attorneys would have been unnecessary.
In his summary judgment "Opinion and Order" the judge stated the "sole issue in this matter [other than attorney's fee requests on both sides] is whether plaintiff has satisfied the clause in his and his former wife's PSA which permits termination of his alimony obligation to defendant." He considered that the outcome turned on whether the plaintiff received a salary and post-divorce complaint pension benefits in excess of $20,000 per year. As noted, the first sentence in the PSA paragraph at issue stated "income from employment." Based on the documents submitted and his prior definition of "salary," the judge concluded that plaintiff's income from those sources did not exceed $20,000, and that the PSA should be enforced by terminating alimony, inclusive of medical and insurance coverage.
The judge then cited R. 4:42-9(a)(1) which allows the court, in its discretion, to award counsel fees to a successful party in a family action and the case law requirements for imposing counsel fees. He then found that plaintiff, with a "salary" below $20,000, had a combined net worth with his present wife of $898,866 as of July 1998, while defendant's net worth was $1.2 million (including the former marital residence valued at over $500,000), and that she had no mortgage and limited expenses. Although obviously both sides had the ability *156 to pay their own legal fees, the judge concluded that the defendant was "in a superior financial position," stating:
Finally, although it is noted that both parties have caused delays in reaching a resolution of this matter, plaintiff's delays cannot go without notice in evaluating his application for counsel fees. During the course of discovery plaintiff has been resistant to providing opposing counsel with answers as to his financial transactions and those of Ms. Strain. A number of court appearances to enforce discovery were necessitated by this resistance on the part of the plaintiff. It should be further noted that he was particularly resistant to have his wife deposed and to have her assets disclosed to the defendant.
Although it is unquestionable that Mr. Yueh's original assertion that his salary had been reduced to $20,000.00 based on the evidence presented to this court. [sic] It is also true that the defendant has engaged in prolonged and extensive discovery without any prior knowledge or justification that plaintiff has been receiving salary in excess of the $20,000.00 threshold. Accordingly, defendant has exhibited a lack of good faith.... Ordinarily, plaintiff would be entitled to full counsel fees from the defendant based upon her actions in resisting this motion. However, since the plaintiff's resistance to discovery has substantially contributed to the delay in the resolution of this case. This court in all due conscience cannot award Mr. Yueh full counsel fees and must reduce the award by all costs attributed to plaintiff's resisting discovery.
Then, the judge accepted plaintiff's full counsel fee request, without any apparent real question or inquiry into its reasonableness, and reduced it by an amount he found represented fees incurred as a result of plaintiff's avoidance of discovery. We are not able to discern how he determined this amount or what time he allocated to each side. We do not know how this post-judgment net fee award of $131,442.45 compared with fees for the actual divorce proceeding.
Defendant argues in her brief that the judge ignored plaintiff's bad faith in assessing fees against her. She points to the following as evidence of his bad faith: plaintiff filed every primary motion (seven in total) and twenty-eight certifications; he filed a motion for leave to appeal, which was denied; he refused to provide discovery or produce his wife for a deposition despite court orders; he filed motions to thwart defendant's ability to discover his true earnings; and he unsuccessfully sought two protective orders. Defendant rightly claims that without the discovery she sought, she could not proceed with her case.
Plaintiff counters that the motions he filed were to combat defendant's claimed bad faith and to protect his wife from defendant's harassment and abuse, although the record appears devoid of any such harassment or abuse. Indeed, plaintiff admits that he resisted complying with court orders, but asserts that it was excusable because of his desire to protect his wife. He takes the position that his current wife had a legitimate expectation of privacy in her financial affairs that he was trying to protect, relying on DeGraaff v. DeGraaff, 163 N.J.Super. 578, 583, 395 A.2d 525 (App.Div.1978). Finally, he argues that his conduct in resisting court orders and discovery was taken into account when the judge reduced his requested counsel fee.

II.
As of the time of the judge's decision[9]R. 4:42-9(a)(1) provided:

*157 No fee for legal services shall be allowed in the taxed costs or otherwise, except (1) In a family action, the court in its discretion may make an allowance both pendente lite and on final determination to be paid by any party to the action, including if deemed to be just any party successful in the actions, on any claim for ... enforcement of interspousal agreements relating to family type matters....
In addition, N.J.S.A. 2A:34-23 states in pertinent part:
Whenever any other application is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party. (emphasis supplied)
Accord, Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Kothari v. Kothari, 255 N.J.Super. 500, 513, 605 A.2d 750 (App.Div.1992). It is axiomatic that an award of counsel fees in such cases is within the discretion of the trial court. Williams v. Williams, supra (59 N.J. at 233, 281 A.2d 273).
It is entirely obvious from the record that this post-judgment discovery aspect relating to the PSA got entirely out of control, with plaintiff filing motion after motion over the course of nearly two years. While the judge did not find plaintiff guilty of "bad faith," he did recognize that plaintiff's delay in the discovery process increased his counsel fee billings and took that into account when deciding the award. It is somewhat surprising that the judge did not consider plaintiff's actions to be in bad faith when the record indicates there was constant disregard by the plaintiff of court orders and discovery rules.
The counsel fee award here strikes us as patently outrageous and unduly punitive to the defendant, particularly where the record reflects that for the most part, contrary to the judge's opinion, she appeared to have acted in relative good faith, and for the most part plaintiff acted in relative bad faith by his recalcitrance and excessive delaying tactics.[10] Indeed, the judge not only did not take into account the unreasonableness of plaintiff's fee request in light of the matter at issue and the results obtained, but appears to have largely rewarded the plaintiff for causing unnecessary expenditure of time and effort by the court, counsel, the parties and the appointed expert. Such action is not appropriate in any type of case.
The argument between the parties over their "real" income, net worth and monthly needs would not be as significant if defendant were truly the person in bad faith. Kelly v. Kelly, 262 N.J.Super. 303, 307, 620 A.2d 1088 (Ch.Div.1992), did state that "where one party acts in bad faith, the relative economic position of the parties has little relevance" because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party. Here, in what could be considered an unexpected ruling after the course of events, at the very end the judge said defendant was the culpable party, despite the plaintiff being in constant disregard of court orders and discovery procedures.
As we observed, the judge made his findings, including ruling on the merits of the dispute about application of the PSA, without hearing any testimony and based on the record after having almost uniformly rejected numerous filed applications by plaintiff. What then attributing bad faith to defendant implies is that the judge's *158 own earlier rulings were somehow ill-founded or improper.
From our review of the record, we do not consider defendant's actions in the same light as did the motion judge, particularly where all parties are under an obligation to obey court orders unless and until overturned on appeal. Because there was no testimony by any witness and no credibility findings, the judge's ruling is not entitled to deference. See Biancardi v. Waldwick Bd. of Ed., 139 N.J.Super. 175, 177, 353 A.2d 123 (App.Div.1976), aff'd o.b., 73 N.J. 37, 372 A.2d 304 (1977); State Farm Mut. Ins. Co. v. Wall, 92 N.J.Super. 92, 98, 222 A.2d 282 (App.Div.1966); see also DiBlasi v. Bd. of Trustees, PERS, 315 N.J.Super. 298, 718 A.2d 241 (App.Div. 1998).
The judge's finding that defendant did not act in good faith appears to us to have gone wide of the mark. Such a finding cannot stand under the circumstances we have reviewed. See State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982); see also State v. Bass, 221 N.J.Super. 466, 484, 535 A.2d 1 (App.Div.1987), certif. denied, 110 N.J. 186, 540 A.2d 182 (1988); Formosa v. Equitable Life Assurance Soc'y of the U.S., 166 N.J.Super. 8, 20, 398 A.2d 1301 (App.Div.), certif. denied, 81 N.J. 53, 404 A.2d 1153 (1979).
Much of the time expended on each side was largely the result of plaintiff's resistance, not only to discovery requests by the defendant, but failure to comply with court orders. Such action should not be rewarded by a fee award, as the judge did recognize, although inadequately, by a downward adjustment. However, even that adjustment was inadequate for several reasons. Notwithstanding the plaintiff's derelictions, the Family Part Judge made no findings of reasonableness or necessity for the fees, presumably implementing the inserted handwritten provision in his original order that if the defendant could not prove that plaintiff had salary greater than $20,000 per year under the PSA, then defendant would have to pay plaintiff's attorney's fees. There was no bad faith on defendant's part in merely requesting discovery. Indeed, defendant had every right to question and inquire as to whether in fact plaintiff's income had been so drastically reduced as he asserted in his own motion, particularly because of its potential impact on her. Hence, it cannot in good conscience be said that defendant (or her attorney) acted in bad faith by seeking to ascertain or to confirm plaintiff's actual income from employment and salary after his retirement.[11] It seems clear that plaintiff did have income of some sort after his retirement from IBM in addition to his pension.
We reject plaintiff's contentions regarding imputing bad faith to defendant. There was a disputed question of interpretation of the PSA, and a resultant issue of whether the fees plaintiff sought were reasonable and necessary and how much of the time claimed resulted primarily from plaintiff's delay. In addition, as noted, the time billed included hours expended before the plaintiff's motion for relief was even filed, i.e., from January 1, 1996 through August 13, 1996. Clearly, any request for discovery thereafter should not result in defendant having to pay for plaintiff's changed circumstances motion and discussions and advice between plaintiff and his attorney prior to service of that motion. That time, which in our rough calculation seems to be 25 hours, must be excluded in any event.
As to the fees awarded, which defendant's brief and argument primarily address, the judge should have scrutinized the record much more closely to determine if there was an undue generation of paper work in connection with the preparation and submission of certifications and exhibits.
*159 We are appalled to find that the appendices in this matrimonial post-judgment application consist of 3,074 pages submitted by defendant, in twenty volumes, largely of motions and certifications with exhibits, and 190 additional pages submitted by plaintiff. A single copy of this appendix (without transcripts) stands approximately sixteen inches high, exclusive of the briefs.
In passing, we reject as without merit plaintiff's claim that the Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1, should be considered by us as an independent basis for affirming the judge's fee allocation. Aside from the fact that the issue was not raised below, and hence we need not address it, the defendant's request for verification of plaintiff's income when he sought to terminate his obligations under the PSA was hardly a frivolous position.
Although the judge's conclusion on the interpretation of the PSA provision is close to the disputed or undisputed material fact line, it appears sustainable under Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995). We recognize defendant claims that there is still open discovery and fact disputes. Defendant apparently acquiesced in submitting the proposed findings and the judge could have concluded that there were inadequate proofs on the fact issue of plaintiff's income from employment and no reasonable prospect for such a showing at that time. Of course, a future Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 1980), application is not precluded if sufficient facts are developed in the future.
With respect to the interpretation of the PSA, defendant was unable to obtain sufficient information to establish her claim that plaintiff's salary may have been over $20,000. There is, of course, no assurance in light of the history of the matter that that is the actual case. Under all the circumstances we cannot conclude that the fee award represents an appropriate exercise of discretion.

III.
Defendant also contends that the judge erred in failing to consider plaintiff's ability to pay his own counsel fees. She argues that the judge undervalued plaintiff's net worth, and points out that her own monthly income is less than her needs, causing her to deplete her assets each year. Plaintiff responds by arguing that his personal net worth was $443,723, rather than the combined approximately $900,000 found by the judge. We find merit in defendant's argument, but leave the matter for consideration by the Family Part in the first instance on remand.
As we have noted on other occasions, litigation concerning the award of attorney's fees and costs have over the years consumed enormous time and energy of the court and counsel. The Supreme Court, attempting to avoid this in the future, issued what were intended to be definitive guidelines in Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995), and Szczepanski v. Newcomb Medical Center, Inc., 141 N.J. 346, 661 A.2d 1232 (1995), for the award of attorney's fees where the prevailing party is entitled to such an award. The Rendine Court explained that the trial court must first "determine the `lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine, supra (141 N.J. at 334-335, 661 A.2d 1202). This requires the "court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party...." Id. at 335, 661 A.2d 1202.
As to the number of hours, the Rendine Court emphasized the importance of "billing judgment" and directed trial courts to "exclude hours that are not reasonably expended." Ibid. (citing Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). For example, the court can subtract from the hours asserted the hours "spent litigating claims on which the party did not succeed and that were distinct in *160 all respects from claims on which the party did succeed." Ibid. (quoting Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 919 (3rd Cir.1985)). Fees should not be awarded against a party for time expended by an obstructing party, especially where the obstructed party may as a result fail to succeed in establishing his or her position.
The determination of "reasonable" hours was elaborated on in Szczepanski, supra (141 N.J. at 366-367, 661 A.2d 1232), where the Court explained that trial courts "should assess what legal services reasonably competent counsel would consider as required to vindicate the protected legal or constitutional rights." Id. at 366, 661 A.2d 1232. The Court also noted that trial "[c]ourts should consider the extent to which a defendant's discovery posture, or a plaintiff's, has caused any excess expenses to be incurred." Ibid.
As to the hourly rates, Rendine explained that a "reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Rendine, supra (141 N.J. at 337, 661 A.2d 1202). The Court directed that trial courts "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Ibid. (citing Rode, supra (892 F.2d at 1183)). The Court also noted that the hourly rate "should be based on current rates rather than those in effect when the services were performed." Ibid.[12]
Where this analytical framework is followed and the judge makes appropriate findings of fact, a fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion. Id. at 317, 661 A.2d 1202.
Although the judge's acceptance of the hourly rate is not accompanied by any findings of fact concerning the prevailing rates in the community, the rates for counsel work do not appear unreasonable. Defendant has not challenged plaintiff's attorney's hourly rate of $200.
On the other hand, the motion judge's comments concerning the amount of time spent by plaintiff's attorney, and indeed by defendant's attorney, do not afford us any confidence that the judge critically considered the amount of time which should have been needed to pursue reasonable discovery and obtain compliance with the court orders and the discovery rule, and ultimately resolve the issue of interpretation and application of the particular clause at issue in the PSA. Examination of the certifications regarding fees raises serious concerns regarding the reasonableness of the amount of hours expended on this matter.
Plaintiff's attorney asserts his office expended 904.6 billable hours through the conclusion of this matter in the Family Part. A good portion of this time was taken up in the motion practice which in our view was unnecessary and counterproductive *161 and only added to the delay. The total number of hours expended in connection with this post-judgment discovery application, the result of which could dictate the ultimate changed circumstances decision, was excessive.[13]
Moreover, counsel indicates in his certification that he has devoted a substantial portion of his practice to matrimonial matters and has experience in such matters. This makes it more troubling that he found it necessary to spend 25.25 hours on legal research for discovery, and additional hours analyzing Lepis v. Lepis, supra (83 N.J. at 139, 416 A.2d 45 (1980)).
The lack of critical analysis of counsel's fee request leads us to the conclusion that the judge's assessment of the reasonableness of the hours expended cannot be given weight and hence is not entitled to any deferential treatment. We are satisfied that a reasonably competent attorney should have been able to competently represent the plaintiff and obtain a similar result by expending far less time and by properly counseling his client with respect to his obligation to obey court orders, rather than on "strategy" to avoid compliance. The judge did try to ensure that the second wife's interests were protected and examined documents in camera. But, this still resulted in granting defendant the relief requested by way of discovery orders. Nonetheless, plaintiff still did not follow the court's orders and chose to disregard them. It makes little sense to then in effect reward plaintiff for his flagrant disregard of court orders and recalcitrance.
In summary, and as further guidance on remand, we discern that the motion judge's award was predicated on unquestioning acceptance of all plaintiff's requested attorney's fees for the 904.60 hours claimed,[14] without adequately taking into account factors such as reasonableness, the ability of the parties to bear their own fees (particularly due to the circumstances here) and that the defendant prevailed on almost all of the applications to the court for orders enforcing discovery. The judge applied the PSA in plaintiff's favor based on what was submitted, using a definition of "salary" that was not in the PSA, even though potentially reasonable. Presumably, *162 because the changed circumstances ruling went in plaintiff's favor he was considered the prevailing party and was awarded all of his attorney's requested fees. Even considering plaintiff the prevailing party, the judge did not properly relate the hours expended to the result and did not sufficiently discriminate between the hours expended on successful and unsuccessful positions. The adjustment made for the delay caused by plaintiff was clearly inadequate.
Simply put, the motion judge failed to scrutinize the fee request in accordance with the spirit and intent of the Court Rules, the statute and the case law. Accordingly, we remand for a searching reconsideration of the fee award.

IV.
Defendant also contends that because the judge failed to make any findings of fact or conclusions of law in his decision to relieve plaintiff of his obligation to maintain medical insurance and to pay unreimbursed medical expenses for her, his decision should be reversed. Plaintiff counters that because the medical expense decision was based on the same findings of fact concerning alimony, the decision should be affirmed.
We have on various occasions reminded trial judges of the requirements of R. 1:7-4, which we have applied to motions as well. This rule states "[i]n civil actions tried without a jury and on every motion decided by written orders that are appealable as of right, the court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon." See also In re Will of Marinus, 201 N.J.Super. 329, 338-339, 493 A.2d 44 (App.Div.), certif. denied, 101 N.J. 332, 501 A.2d 981 (1985).
We stated in Salch v. Salch, 240 N.J.Super. 441, 443, 573 A.2d 520 (App.Div.1990):
[F]ailure to perform the fact-finding duty "constitutes a disservice to the litigants, the attorneys and the appellate court." Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, we are left to conjecture as to what the judge may have had in mind.

[citations omitted.]
We do note that although the judge made no specific findings concerning the medical insurance and payments of life insurance, as he should have, he listed the alimony payments, the medical insurance premiums, the unreimbursed medical expenses and life insurance policy in reciting plaintiff's obligations to defendant. The judge said: "In sum, plaintiff paid defendant an amount of approximately $5,067.74 monthly, or $60,812.84 per year." Although he did not specifically so state, it might be inferred that the judge considered the medical payments and insurance as part of plaintiff's alimony obligations. This has support in the PSA which said that plaintiff could deduct one-half of the medical insurance premium and unreimbursed amount he paid as "alimony." However, that does not explain the total elimination of plaintiff's obligation. Because the judge did not explain his reasoning, and because his reasoning can be inferred only partially from the record, a remand is required.
Although defendant mentions the life insurance issue in her point heading, she does not discuss it in her brief. The judge failed to address this issue in his opinion. It may well be that he terminated the obligation because there was no longer any need to secure the alimony award. Because defendant does not challenge the termination of alimony as such, we conclude there was no abuse of discretion in terminating the life insurance obligation.
We reverse the counsel fee award and remand for a searching consideration of the fee request, and a new decision therein. Our remand is not to be taken as any direction that plaintiff is necessarily entitled to an award of counsel fees in any amount or at all. The judge is free to *163 decide that each side should bear its own legal fees under the circumstances or that one side or the other is entitled to fees, subject, however, to our decision herein. We also remand for a statement of reasons regarding the termination of medical payments in accordance herewith.
NOTES
[1] A different law firm represented defendant in the trial court.
[2] Time billed (25 hours or $5,000) prior to filing the motion on August 14, 1996, was included in the fees sought by plaintiff at the conclusion of the post-judgment proceedings in the Family Part.
[3] The paragraph quoted above is somewhat ambiguous because "income from employment" in the first sentence addressing the contingency of such income less than $20,000 per year seems broader than the term "salary" that is used in the second sentence which speaks to the situation where income is above that amount. "Salary" appears to have a new definition of "income," while recasting a reference to pension benefits. Application of the first sentence would result in termination of alimony; application of the second sentence contemplates a modification of alimony. Eventually, after soliciting input from counsel, the motion judge provided his definition of "salary."
[4] We emphasize our concern with the necessity of such a provision at the outset unless there was some indication of bad faith by defendant, in which case the remedy might have been to deny discovery. Resolution of fee issues generally abide the outcome. Moreover, because knowledge of plaintiff's income was peculiarly within his ken, and he was the one asking for modification, the defendant was within her rights to ask plaintiff for reasonable proofs.
[5] The record originally furnished to us did not contain transcripts, except for the August 7, 1998 proceeding over a dispute as to the form of the order in which the judge decided he would take only written submissions and decide the matter on the papers, and the January 8, 1999 proceeding for a stay. Failure to furnish transcripts can hinder our ability to review what transpired and also to consider whether there was good or bad faith actions by the attorneys. We thus requested and received transcripts of proceedings held on the record. These transcripts reflect the justifiable frustration of the motion judge at the undue protraction of the matter. In terms of actual court time and the impact on fees, based on the transcripts we received, we estimate that in each instance the actual time before the judge was extremely short, no more than thirty minutes, and probably much less in most instances.
[6] In the transcript of a January 3, 1997 argument the judge comments on plaintiff's failure to supply information and states:

And the answer is clear on its face what I do if he doesn't fulfill the burden of discovery, I'm going to find that he has not supplied you with the information. He's hiding the information; and, therefore, I can only come to one conclusion, that he does have an income; and that's why it's being hidden, and it continues in the alimony. I mean, that's where it logically goes.
[7] Plaintiff worked for IBM (and perhaps others) before his retirement. He and defendant were originally from China. Apparently his business activities involved considerable international travel and he was involved in business overseas.
[8] Coincidentally, the amount plaintiff's attorney certified his client had already paid him was $130,187.78. Plaintiff's attorney's certification had delineated a separate category he claimed was due to his delay. However, he only included time spent opposing the deposition of Mary Strain, $18,052.25 based on 90.855 hours of billable time.
[9] The "Opinion and Order" was issued December 2, 1998. R. 5:3-5(c) was adopted effective April 5, 1999, and sets forth other factors to consider when reviewing a counsel fee request in the Family Part.
[10] Even plaintiff's attorney's billing records bear this out. We note numerous entries regarding discussion of "strategy" with the client, particularly after the court's rulings, rather than efforts to comply.
[11] Our experience, and that of matrimonial practitioners, is that something in human nature often causes extreme claims on both sides with respect to income, assets and expenses, particularly in the volatile and emotional area of divorce and its aftermath.
[12] The Court also commented on the relationship between the attorneys' fees and the amount of damages recovered or the degree of success. Id. at 336, 661 A.2d 1202. The Court noted that although damages recovered, or success with respect to the point at issue, may be a factor bearing on the reasonableness of the fee award, fee-shifting statutes do "not require proportionality between damage recoveries and counsel-fee awards...." Ibid. Szczepanski explained that "[t]he trial court's responsibility to review carefully the lodestar fee request is heightened in cases in which the fee requested is disproportionate to the damages recovered." Szczepanski, supra, 141 N.J. at 366, 661 A.2d 1232. In such cases, Szczepanski instructed the trial court to "evaluate not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated in the context of the statutory objectives, as well as any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts." Id. at 366-367, 661 A.2d 1232. Rendine also explained that after determining the lodestar, the judge must consider whether an enhancement or a reduction is appropriate under the circumstances. Rendine, supra (141 N.J. at 336-337, 661 A.2d 1202).
[13] For instance, review of plaintiff's attorney's certification indicates many "strategy" conferences with his client, numerous revisions, and much more time spent on matters than might be expected. One such item in the last category is the motion for leave to appeal and considering going to the Supreme Court, all when such interlocutory relief is considered extraordinary relief and rarely granted. Our review indicates that plaintiff spent approximately 45 hours on that application compared to 1.7 hours by his adversary. Moreover, although we leave the precise analysis to the motion judge, our reading of the time records submitted by defendant (which we noted included billing in a minute amount for some Arizona case that seems to have no relevance), indicates the following: It appears that over 600 hours were devoted to opposing defendant's efforts to determine plaintiff's income. Included in that were over 350 hours on what appears to be evading discovery and unnecessary motions; over 100 hours on the first unsuccessful attempt to obtain a protective order; over 100 hours on the second unsuccessful attempt at a protective order; over 40 hours regarding appellate relief; and almost 30 hours attempting to hold defendant in violation of litigant's rights. In addition, 25 hours were devoted to the matter before the motion was filed and defendant formally knew about plaintiff's application. We note that for his part, defendant's attorney expended "merely" 322 billable hours on this matter, at an hourly rate of $275.

Admittedly, our review is hampered somewhat by cryptic or terse billing language. However, we are not at this time making findings, but merely illustrating, based on our experience with such matters, for the guidance of the trial court which is required to make the necessary inquiry.
[14] Plaintiff's attorney's bill recites 824.20 hours (at $200 per hour) for his time and 80.4 hours (at $175 per hour) for his associate. Assuming a sole practitioner with his or her own actual billable time of between 1,500-2,000 hours per year, it would seem from that that plaintiff's attorney's practice for the time period involved would have been substantially devoted to this one post-judgment matrimonial discovery and summary judgment matter. The judge may find it appropriate to inquire as to this on the remand.