**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0482-19T2

ROLAND M. NEWLAND,

    Plaintiff-Appellant,

v.

MARIA A. NEWLAND,

    Defendant-Respondent.

_____

Submitted December 9, 2020 – Decided January 21, 2021

Before Judges Ostrer, Accurso, and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0966-15.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

Graziano & Flynn, PC, attorneys for respondent (Ronald A. Graziano and Karina E. Hehn, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Roland M. Newland appeals from the September 20, 2019 denial of his motion for reconsideration, as well as the underlying orders preceding this denial, which reformed the judgment of divorce (JOD) in favor of defendant Maria A. Newland. He also appeals from the January 24, 2020 order awarding defendant counsel fees. We affirm the challenged orders, substantially for the reasons set forth by Judge James J. Ferrelli's well-reasoned, comprehensive opinions.

## I. The Parties' Education, Marital and Work History

Defendant was born in Spain in 1963 and has the equivalent of a high school diploma. Plaintiff was born in Panama in 1950 and has a medical degree. The parties married in 1988 and had a daughter together in 1993. Defendant performed data entry and secretarial work in the early years of the parties' marriage, but stopped working in 1998. She bore primary responsibility for raising the parties' daughter, and plaintiff was the principal wage earner throughout the parties' marriage. Due to injuries defendant suffered in an automobile accident in 2013, she cannot sit or stand for long periods of time, takes several prescribed medications and uses a cane to walk outside her home.

During the marriage, the parties constantly moved to enhance plaintiff's career. In 2001, plaintiff was employed as a physician for the Bureau of Prisons

(Bureau) in Mississippi and in 2015 transferred from the Bureau to the Department of Defense (Department), Veteran's Affairs. When he retired from the Department in 2017, his gross income was approximately $205,000. In 2018, plaintiff began working as a contract physician at a federal prison in Mississippi, and his total gross income was $325,771.

The parties experienced marital and financial difficulties in the years leading up to their divorce in 2015. In 1997, plaintiff filed individually for bankruptcy but did not inform defendant. Additionally, he relocated to Puerto Rico in 1998, without defendant, to pursue his career. As a result of the parties' separation, defendant moved back to Spain with the parties' daughter.

The record reflects plaintiff did not provide financial support to defendant for some time after the separation, so she initiated a job search. When defendant received a job offer in 1999, plaintiff urged her to decline the offer and care for their daughter. Plaintiff also promised he would resume supporting the family. Defendant agreed to this arrangement and never returned to the job market.

Although the parties reconciled in 2000, defendant continued to live in Spain, whereas plaintiff worked at different locations in the United States. In March 2015, while living in New Jersey, plaintiff filed a pro se complaint for divorce, seeking only the dissolution of the parties' marriage. Further, he wrote

"N/A," on various lines of the complaint form to confirm issues pertaining to custody, child support, alimony, or equitable distribution were "not applicable" in his divorce action. At the time of his filing, the parties had not yet reached any formal agreement on these issues.

In April 2015, the parties drafted two versions of a support agreement, one in English (ESA), and the other in Spanish (SSA). According to defendant, she prepared the SSA consistent with plaintiff's instructions. On April 16, 2015, the parties signed the ESA and SSA before a notary public in New Jersey. The ESA confirmed plaintiff would pay permanent alimony and that the parties' daughter would have plaintiff's "full financial support until she completes her education goals." Both versions of the agreements provided for plaintiff to pay defendant approximately 3000 Euros per month.

On April 17, 2015, the parties appeared at the Spanish Consulate in New York and signed a property agreement (PA), which allowed plaintiff to retain exclusive rights to his Thrift Savings Plan (TSP) and provided defendant with exclusive rights to the parties' home in Spain. Defendant subsequently testified that when the PA was prepared, she believed the parties' only assets were the home in Spain, the TSP, and their two vehicles.

A-0482-19T2

In July 2015, plaintiff filed a request to enter default. The trial court granted plaintiff a default JOD on October 19, 2015. The JOD referenced, but did not expressly incorporate, the terms of the ESA. Defendant was living in Spain at this time and did not appear at the default hearing. It is undisputed that she was not represented by counsel throughout the divorce action.

## II. The Parties' Post-Judgment Litigation

In 2018, plaintiff fell behind in his alimony payments and defendant moved to enforce the JOD. She also sought to modify the JOD, pursuant to Rule 4:50-1, seeking equitable distribution of the marital portions of plaintiff's Federal Employee Retirement System (FERS) Annuity (which generated gross income of $6378 per month), and his Veteran's Administration (VA) benefits (which generated income of $140.05 per month). Defendant claimed she previously was unaware she had rights to these assets. Further, defendant moved for leave to file a Tevis[1] claim for fraud, alleging plaintiff allowed two judgments to be entered against her during the marriage without her knowledge, and following the entry of the JOD, he created a potential tax liability for her by filing joint tax returns in 2016 and 2017. In response, plaintiff cross-moved for enforcement of the JOD.

_____

[1] Tevis v. Tevis, 79 N.J. 422 (1979).

A-0482-19T2

On November 30, 2018, Judge Ferrelli enforced the JOD and compelled plaintiff to satisfy his alimony arrears. Further, the judge found defendant demonstrated "a prima facie case of overreaching conduct" by plaintiff, and that her signature on the ESA "was not knowing and voluntary, but rather was coerced and based upon incomplete and inaccurate information provided by" plaintiff. The judge declined to find the ESA "was intended to encompass all terms of the parties' agreement relating to the resolution of issues pertaining to their divorce." Moreover, the judge found the issues pertaining to the two judgments against defendant, as well as any potential tax liability arising from plaintiff's post-judgment filing of joint tax returns, were "more appropriately addressed in the context of equitable distribution." The judge ordered discovery and a plenary hearing "to determine the extent to which, if at all, the [JOD] and the [ESA] should be reformed," consistent with Rule 4:50-1(f). Additionally, he denied without prejudice each party's request for counsel fees.

Prior to the plenary hearing, plaintiff filed a motion to modify or terminate his alimony obligation, based on his prospective retirement. On April 18, 2019, Judge Ferrelli entered an order deferring plaintiff's motion until the plenary hearing. Also, the judge directed plaintiff to provide outstanding discovery as well as a prior and current Case Information Statement. Additionally, the judge

ordered the parties to provide supplemental submissions regarding the issue of alimony. Defendant complied and filed a supplemental brief, opposing any change to her alimony payments; plaintiff failed to submit a supplemental brief.

### III. The Plenary Hearing

On May 9, 10 and 13, 2019, Judge Ferrelli heard testimony from the parties on all outstanding issues. He found the parties presented "extensive conflicting testimony regarding their marital assets and liabilities," and that "[n]either party's testimony regarding the Property Agreement is completely credible." However, based upon the evidence presented as well as the parties' conduct following the entry of the JOD, the judge concluded the PA, allowing defendant to retain the Spain home and plaintiff to keep his TSP, should not be disturbed. He deemed this exchange to be a "fair and equitable distribution of a portion of the marital property between the parties," and that the parties "knowingly and voluntarily entered into that Agreement." Further, the judge concluded plaintiff's "testimony that the Property Agreement resolves all equitable distribution issues in this matter is not credible. He . . . had not provided [defendant] with information about his FERS pension or his VA [b]enefits" at the time it was executed. The judge added:

> [b]y failing to disclose [the FERS pension and VA benefits] Husband intentionally misrepresented to Wife

that the FERS retirement account and the VA retirement account were not subject to equitable distribution in connection with the parties' 2015 divorce proceedings. Husband intentionally failed to include Wife in the . . . bankruptcy filing, and excluded Wife from pertinent information and knowing participation in the filing of the parties' income tax returns, resulting in judgments being entered against Wife. Husband took advantage of his superior financial position and education . . . [and] violated his duty to be fair to his wife . . . . [T]he court finds that Wife satisfied her burden of proof in showing exceptional circumstances under Rule 4:50-1(f) limited to the referenced equitable distribution issues such that it is appropriate to reform the parties' Agreement solely as to those noted issues.

As Judge Ferrelli was satisfied defendant "did not know about [plaintiff's] retirement accounts, and therefore could not and did not surrender her interest in those accounts when she executed the Property Agreement," he awarded her half of "the marital coverture portion of the FERS Annuity and the Veteran's benefits, plus gains and losses on her share, as part of equitable distribution." Further, because defendant was unaware of the existence of a 1998 foreclosure judgment and a 2012 tax judgment against her, the judge concluded plaintiff should bear responsibility for any future claims stemming from these judgments. Similarly, the judge directed plaintiff to assume all responsibility for any tax liability arising from his post-judgment joint tax return filings. The judge did not believe plaintiff's claim that he "mistakenly" filed these returns. Instead,

8

Judge Ferrelli concluded that plaintiff filed joint tax returns after the divorce "because he believed it was financially advantageous to him."

Judge Ferrelli denied without prejudice plaintiff's request to modify or terminate his alimony obligation and found:

> the facts presented to the court in this proceeding established that it would be inequitable at this time to terminate or modify Husband's alimony obligation, because his alimony is Wife's sole source of support and has been for over 20 years . . . . [B]ased on her age, the location where she lives, her outdated skills and her physical limitations, it is very unlikely that she will find meaningful employment at the age of 55. In contrast, . . . Husband is presently healthy and remains employed with substantial financial benefits and no significant debts.

Further, the judge concluded plaintiff grossed $206,000 in the year the parties divorced, and by 2018, plaintiff grossed $260,400 per annum as a contract physician. Also, the judge determined plaintiff enjoyed additional income from other sources, including his FERS annuity of $6378 per month, plus VA benefits of $140.05 net per month. The judge calculated plaintiff's gross earned and unearned income for 2018 was $325,771.

Based on the judge's assessment of the parties' respective personal and financial circumstances, he determined plaintiff's request was "not ripe for adjudication," even though at age sixty-eight, plaintiff had reached a "good faith

9

retirement age under N.J.S.A. 2A:34-23(j)(1)." Accordingly, in his June 28, 2019 opinion, the judge provided that after Qualified Domestic Relations Orders effectuated a division of the coverture portions of plaintiff's FERS annuity and VA benefits, plaintiff could renew his alimony application, subject to supplying

> all necessary supporting documentation and information, including but not limited to a fully executed and completed [Case Information Statement] that accounts for all bank, investment and/or financial accounts. At a minimum, such application . . . should include "a specifically detailed, proposed plan for an actual retirement, as opposed to a non-specific, general desire to someday retire." Mueller [v. Mueller], 446 N.J. Super. [582], 591 [(Ch. Div. 2016).]

## IV. Reconsideration Motion and Counsel Fees

Plaintiff promptly moved for reconsideration of the June 28, 2019 order. On September 20, 2019, Judge Ferrelli denied the reconsideration motion, triggering the instant appeal. Following our temporary remand to allow Judge Ferrelli to address the parties' counsel fee applications, the judge entered an order on January 24, 2020, awarding defendant counsel fees in the sum of $30,819 and denying plaintiff's request for counsel fees. Plaintiff filed an amended notice of appeal to include the January 24, 2020 order.

A-0482-19T2

### V. Legal Analysis

On appeal, plaintiff argues it was error for Judge Ferrelli to reform the JOD. Further, he contends that even if defendant was entitled to a modification of the JOD, the judge improperly disregarded the impact of the reformed JOD on his ability to pay alimony. Lastly, he argues the court erred in granting counsel fees to defendant.

Our review of the challenged orders is limited. We owe substantial deference to a Family Part judge's findings of fact because of the court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is given to the credibility determinations made by the trial judge who "hears the case, sees and observes the witnesses, and hears them testify," thus, affording the trial judge "a better perspective than a reviewing court in evaluating the veracity of a witness." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). "[A] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate

court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)). On the other hand, we owe no special deference to the judge's legal conclusions. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Regarding Judge Ferrelli's reformation of the JOD, it is well established that a determination on a motion for relief under Rule 4:50-1 is "left to the sound discretion of the trial court, guided by principles of equity," F.B. v. A.L.G., 176 N.J. 201, 207 (2003), and "should not be reversed unless it results in a clear abuse of discretion," U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). Here, we perceive no such abuse of discretion.

"Voluntary agreements that address and reconcile conflicting interests of divorcing parties support our 'strong public policy favoring stability of arrangements' in matrimonial matters." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999) (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)). Accordingly, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Id. at 193-94 (quoting Smith, 72 N.J. at 358). Nevertheless, the "law grants particular leniency to agreements made in the domestic arena, and likewise allows judges greater discretion when

12

interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992). Additionally, "[t]he equitable authority of courts to modify property settlement agreements executed in connection with divorce proceedings is well established." Miller v. Miller, 160 N.J. 408, 418 (1999) (citing Conforti v. Guliadis, 128 N.J. 318, 323 (1992)).

Marital settlement agreements "must reflect the strong public and statutory purpose of ensuring fairness and equity in the dissolution of marriages." Ibid. (citing Petersen v. Petersen, 85 N.J. 638, 644 (1981)). Thus, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994). Moreover, unconscionability in the negotiations of a settlement may serve as a basis for reforming or setting aside a marital settlement agreement. See Miller, 160 N.J. at 419. Reformation is appropriate when a court determines the terms of a marital settlement agreement are unfair or inequitable. Id. at 418.

When evaluating an agreement to determine if it is fair and equitable, or whether it is unconscionable, a court

> must consider issues such as the adequacy of the
> agreement at inception, the presumed understanding of

A-0482-19T2

the parties at that time, the reasonable expectation of the parties during the life of the agreement, [and] the manner in which the parties acted and relied on the agreement.

[Glass v. Glass, 366 N.J. Super. 357, 372 (App. Div. 2004) (citing Konzelman, 158 N.J. at 193).]

"[A]pplications for relief from equitable distribution provisions contained in a judgment of divorce are subject to [Rule 4:50-1] and [are] not, as in the case of alimony, support, custody, and other matters of continuing jurisdiction of the court, subject to a 'changed circumstances' standard." Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004) (first alteration in original) (quoting Pressler, Current N.J. Court Rules, cmt. 1.7 on R. 4:50-1 (2004)). A party may secure Rule 4:50-1(f) relief from a judgment if there are exceptional or compelling circumstances which indicate enforcement of the judgment "would be unjust, oppressive or inequitable." Schwartzman v. Schwartzman, 248 N.J. Super. 73, 77 (App. Div. 1991). Considering subsection (f) contemplates exceptional circumstances, "each case must be resolved on its own particular facts." Baumann v. Marinaro, 95 N.J. 380, 395 (1984).

Governed by these standards, we are satisfied Judge Ferrelli did not abuse his discretion by reforming the JOD pursuant to Rule 4:50-1(f). He reformed the JOD only after finding defendant demonstrated exceptional circumstances

warranting that relief, because she was not represented by counsel prior to the entry of the JOD, she lacked awareness of the parties' financial circumstances in general, and specifically did not understand she was entitled to seek a portion of plaintiff's FERS annuity and VA benefits. See Guglielmo, 253 N.J. Super. at 542 (finding that the marital agreement between the parties was unconscionable and subject to reformation because the wife left her employment at her husband's request, she was not represented by her own attorney, and she did not handle any of the family's finances). Judge Ferrelli also found it noteworthy that plaintiff was "unable to articulate why he marked 'N/A'" in his complaint for divorce form, relative to equitable distribution of all debts and assets or support payments. Additionally, the judge observed that before the JOD was entered, plaintiff did not disclose to the trial court that

> the parties jointly owned real property, had other marital property that was subject to distribution, or that spousal or child support were issues, inasmuch as [defendant] was not working and [plaintiff] was supporting his wife and daughter . . . . [His] failure to disclose these issues to the court undermines his credibility in this matter.

"A Family Part judge has broad discretion . . . in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012). Further, "in dividing marital assets the court must take into account the

15

liabilities as well as the assets of the parties." Monte v. Monte, 212 N.J. Super. 557, 567 (App. Div. 1986); see also Slutsky v. Slutsky, 451 N.J. Super. 332, 348 (App. Div. 2017). Appellate courts affirm equitable distribution awards "as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000) (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)). The award "will be affirmed even if [we] would not have made the same [ruling] . . . as the trial court." Perkins, 159 N.J. Super. at 247-48.

Considering the record as a whole, it is evident Judge Ferrelli made extensive credibility and factual findings throughout the parties' post-judgment litigation. The judge's opinions confirm that before he reformed the JOD, he considered the length of the parties' marriage, defendant's financial dependence on plaintiff, her inferior education, her lack of employment since 1998, plaintiff's lack of candor with the trial court when he sought entry of the default JOD, and plaintiff's incredible testimony during the plenary hearing. Given the judge's well-supported findings and our standard of review, we perceive no basis to disturb Judge Ferrelli's assessment that plaintiff engaged in "overreaching and fraudulent conduct," warranting reformation of the JOD to allow for a fair

16

distribution of the plaintiff's retirement benefits. Indeed, the judge's decision to reform the JOD was in keeping with the principle that equitable distribution "reflects a public policy that is 'at least in part an acknowledgment that marriage is a shared enterprise, a joint undertaking, that in many ways [] is akin to a partnership.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 284 (2016) (alternation in original) (internal quotation marks omitted) (quoting Smith, 72 N.J. at 361). Similarly, we agree with Judge Ferrelli that plaintiff should bear responsibility for the two judgments entered against defendant without her knowledge, and that he alone should satisfy any potential tax liability stemming from his improper filing of joint tax returns in 2016 and 2017.

We also are not persuaded by plaintiff's argument that the trial court erred by failing to "reassess the judgment of divorce as a whole" and afford him relief from his alimony payments when reforming the JOD. As Judge Ferrelli made clear, he did not deny plaintiff's request for modification or termination of alimony outright; rather, the judge denied these requests without prejudice, and recognized plaintiff's good-faith retirement age. Therefore, the judge allowed plaintiff to renew his application, subject to providing proper financial information and a detailed plan for retirement, after the FERS annuity and VA benefits were equitably distributed.

As the judge explained, he could not "determine the extent to which, if at all, [plaintiff's] alimony obligation should be modified," particularly since plaintiff remained employed and enjoyed significantly greater income in 2018 than at the time of the parties' divorce. Further, the judge found "it would be inequitable at this time to terminate or modify [plaintiff's] alimony obligation, because his alimony is [defendant's] sole source of support and has been for over [twenty] years."

Consistent with N.J.S.A. 2A:34-23(j), "[a]limony may be modified or terminated upon the prospective or actual retirement of the obligor." Further, subsection (j)(1) creates "a rebuttable presumption that alimony shall terminate upon the obligor . . . attaining full retirement age," although for good cause and upon consideration of certain factors, "[t]he rebuttable presumption may be overcome[.]" N.J.S.A. 2A:34-23(j)(1). Such factors include "[t]he degree and duration of the economic dependency of the recipient upon the payor during the marriage" as well as "[t]he health of the parties at the time of the retirement application," and the "[s]ources of income, both earned and unearned, of the parties." N.J.S.A. 2A:34-23(j)(1)(c), (f), (i). It is clear from the record before us that Judge Ferrelli weighed the statutory factors outlined in N.J.S.A. 2A:34-

18                                                    A-0482-19T2

23(j)(1) when he considered plaintiff's request for a modification or termination of alimony, and we decline to find he abused his discretion in this regard.

Based on our conclusions, we need not address at length Judge Ferrelli's September 20, 2019 denial of plaintiff's motion for reconsideration under Rule 4:49-2. Briefly, the judge found plaintiff's reconsideration motion failed to establish that the judge relied on an irrational basis or failed to appreciate the evidence presented when he issued his June 28, 2019 decision. We agree with this finding.

A motion for reconsideration is not a chance to get "a second bite of the apple." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 463 (App. Div. 2002). Further, "[r]econsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 393, 401 (Ch. Div. 1990). We will not disturb a trial court's reconsideration decision absent a showing of a clear abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994).

Reconsideration is appropriate in two circumstances: (1) when the court's decision is "based upon a palpably incorrect or irrational basis," or (2) when "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J.

Super. 374, 384 (App. Div. 1996) (quoting D'Atria, 242 N.J. Super. at 401). When a litigant is dissatisfied with a court's decision, reconsideration is not appropriate; rather, the litigant should pursue an appeal. D'Atria, 242 N.J. Super. at 401. Furthermore, a motion for reconsideration is not "a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (citing Cummings, 295 N.J. Super. at 384).

Here, the record is devoid of evidence demonstrating Judge Ferrelli did not consider, or failed to appreciate the significance of probative, competent evidence offered by plaintiff. We also cannot ignore the fact that prior to the plenary hearing, plaintiff was ordered to supplement his submissions to more fully address his alimony claims, and he simply violated that order. Despite plaintiff's recalcitrance, Judge Ferrelli painstakingly sifted through the parties' proofs and their testimony before issuing his well-reasoned June 28, 2019 opinion. Under these circumstances, we decline to conclude Judge Ferrelli abused his discretion in denying plaintiff's reconsideration motion.

Similarly, we are not persuaded Judge Ferrelli erred in awarding defendant counsel fees under his January 24, 2020 order. Pursuant to Rule 5:3-5(c), a trial court has discretion to award counsel fees in matrimonial actions.

Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010) (citing Eaton, 368 N.J. Super. at 225). An award of counsel fees will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

"Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)). In determining the amount of counsel fees to award, the court should consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [Rule 5:3-5(c).]

Here, the trial court considered the parties' financial circumstances, as well as their ability to pay counsel fees. Additionally, the judge observed that

plaintiff "repeatedly exercised bad faith throughout the entirety of this litigation." The judge explained:

> [i]n September 2018, defendant filed a notice of motion for enforcement of plaintiff's spousal support obligation and for other relief. The November 30, 2018 order granted five of defendant's eight requests. Thereafter, the court issued Case Management Orders related to discovery required for the parties' plenary hearing. Plaintiff failed to provide timely and complete responses to several discovery requests, which resulted in further telephone conferences with the court as well as additional scheduling orders.
>
> In March 2019, plaintiff filed a Notice of Motion to modify or terminate his spousal support obligation while the plenary hearing was pending. The court denied plaintiff's motion and reserved the issue. The court requested supplemental submissions regarding the issue of spousal support. Defendant provided a twelve-page letter brief, while plaintiff provided no supplemental submission to the court.

As we have noted, even if a financial disparity does not exist between parties, "where a party acts in bad faith the purpose of a counsel fee award is to protect the innocent party from unnecessary costs and to punish the guilty party." Welch v. Welch, 401 N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)). "[W]here one party acts in bad faith, the relative economic position of the parties has little relevance." Yueh, 329 N.J. Super. at 461 (quoting Kelly, 262 N.J. Super. at 307).

A-0482-19T2

Here, we are convinced Judge Ferrelli's findings of plaintiff's bad faith are well supported by the record. Also, because the judge presided over the parties' plenary hearing, as well as their various post-judgment applications, he was familiar with their financial circumstances. Accordingly, there is no basis to second-guess the judge's counsel fee award.

In sum, plaintiff's arguments concerning the challenged orders reveal nothing so wide of the mark that we could reasonably conclude a clear mistake was made by the judge in his rulings. Rather, we are convinced Judge Ferrelli's factual and credibility findings are well-grounded, and his legal conclusions are unassailable. Thus, we affirm the challenged orders in all respects.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0482-19T2