224 N.J. Super. 417 (1988)
540 A.2d 908
STEPHEN F. GABLE, SR., PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1988.
Decided April 22, 1988.
*418 Before Judges O'BRIEN, HAVEY and STERN.
James Katz argued on behalf of appellant (Tomar, Seliger, Simonoff, Adourian & O'Brien, attorneys; James Katz on the briefs).
*419 Kathe Mullally, Deputy Attorney General, argued on behalf of respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Kathe Mullally on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Petitioner Stephen F. Gable, Sr., appeals from a determination by respondent Board of Trustees of the Public Employees' Retirement System (Board), denying him accidental disability benefits under N.J.S.A. 43:15A-43. Petitioner was a correction officer when he sustained injuries during three separate altercations involving jail inmates, resulting in his total disability. The issue on appeal is whether his injuries resulted from "traumatic events" under N.J.S.A. 43:15A-43. We conclude that each of the incidents were traumatic events and therefore reverse the Board's determination.
Petitioner began working as a correction officer in the Camden County Jail in April 1980. He sustained injuries to his back during separate incidents occurring on September 26, 1980, March 19, 1982, and August 10, 1982. Each incident involved an altercation with an inmate while petitioner was carrying out his functions as a correction officer. As a result of the combination of the three incidents, petitioner was permanently and totally disabled. In 1983 he underwent a laminectomy and spinal fusion. He returned to work in March 1984 but in August 1985 was forced to retire because of his physical disability.
Petitioner's application for accidental disability benefits under N.J.S.A. 43:15A-43 was denied. At a hearing conducted before an administrative law judge, the parties stipulated petitioner was permanently and totally disabled as a direct result of the three events which occurred during petitioner's regular and assigned duties. It was also stipulated that petitioner was required to show that all three events were "traumatic events" *420 under N.J.S.A. 43:15A-43 in order to recover accidental disability benefits. The ALJ found that all three incidents were traumatic events and thus petitioner was entitled to an accidental disability retirement pension. The Board rejected the findings of the ALJ, concluding that the events of September 26, 1980 and August 10, 1982 were not traumatic events. However, the Board agreed with the ALJ that the incident of March 19, 1982 was a traumatic event. Since petitioner failed to demonstrate all three events were traumatic, his application for accidental disability benefits was denied.
The facts presented at the ALJ hearing established that petitioner's duties as a correction officer at the Camden County Jail included the general care of inmates which involved feeding, processing, and watching them to make sure they did not hurt themselves or each other, or attempt to escape. Petitioner conceded there were "sporadic" instances of violence, and that it was "always in the back of your mind" that violent behavior might occur. However, he testified that the three incidents in question were not "typical" of his normal duties as a correction officer.
The first incident occurred on September 26, 1980, when petitioner came upon two inmates who were fighting. One of the inmates threw a bottle of talcum powder at petitioner, causing the powder to disperse into petitioner's face and impair his vision. While petitioner was clearing his eyes he heard a chair scrape on the floor and saw the inmate coming toward him with the chair. On cross-examination, he explained that while he was not sure he actually "saw" the chair, the sound of it caused him to believe the inmate had armed himself with it. At that point, petitioner lunged at the inmate and "hit him low." While doing so, petitioner "felt tremendous pain" in his back. Officer Joseph Charles, who witnessed the incident, testified the inmate picked up a chair and struck petitioner across the back with it when petitioner attempted to grab the inmate.
*421 The second event occurred on March 19, 1982 when petitioner attempted to awaken a prisoner in a holding cell. When petitioner shook the legs of the inmate, the inmate kicked petitioner in the chest, propelling him against the concrete cell wall. Officer Frank Schillig testified that the inmate "brought all the force of his body into the feet, hit [petitioner] and drove him up against the wall."
The third and final event took place on August 10, 1982. Petitioner and Officer Schillig were processing an incoming inmate who appeared "to be in a rather unstable mental state." While the inmate was being "deloused" he attempted to escape. Schillig and petitioner grabbed the inmate and called for assistance. A struggle ensued. Petitioner grabbed the inmate around the neck in order to control him. During the struggle everyone "went down in a pile" with petitioner on the bottom. As petitioner fell, his knee struck a one-inch high concrete lip.
On appeal, petitioner contends all three incidents were "traumatic events" under N.J.S.A. 43:15A-43, and thus he is entitled to accidental disability benefits.
N.J.S.A. 43:15A-43 allows accidental disability retirement benefits if an employee "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties...." As can be gleaned from the statute, there are four prerequisites to entitlement: (1) petitioner is permanently and totally disabled; (2) the event occurred "during and as a result of the performance of" petitioner's duties; (3) the event was "traumatic," and (4) the disability directly resulted from that event. See Pollara v. Police & Fire Retire. Sys. Trustees, 183 N.J. Super. 505, 509 (App.Div. 1982). Since the parties here have stipulated three of the four criteria, the sole issue is whether the events were "traumatic." The current test for "traumatic event" is that stated by our Supreme Court in Kane v. Board of Trustees, Police & Firemen's Ret., 100 N.J. 651, 663 (1985):

*422 ... to be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
In denying petitioner accidental disability benefits here, the Board found that petitioner failed the first prong of the Kane test because both the incidents of September 26, 1980 and August 10, 1982 were within the normal "stress or strain" of petitioner's job as a correction officer, since he was simply fulfilling his duties when he subdued the inmates during the incidents.[1] The Board also concluded that petitioner failed to meet the second prong of the Kane test: that petitioner met "involuntarily with the source of the harm." It was the Board's view that petitioner "was [voluntarily] carrying out his duties to maintain the security in the prison and to protect the inmates" by "subduing an outbreak of violence...." Finally, the Board concluded that the source of petitioner's injuries was not a "great rush of force or uncontrollable power."
We disagree with the Board that the September 26, 1980 and August 10, 1982 incidents were within the normal "stress or strain" of petitioner's work effort. The "stress or strain" prong in Kane must be understood in the factual context of that case. One of the alleged traumatic events in Kane occurred when a policeman stepped on an uneven piece of concrete *423 and twisted his ankle and knee in an effort to avoid falling. Id. at 655. A second involved a policeman who wrenched his leg while stepping on a stone. Id. at 656. A third involved a policeman who tore a wrist ligament trying to close a fire hydrant. Id. at 657-658. The Court found that none of the policemen suffered traumatic events since two sustained injuries caused by the force of their own bodies after a slip and fall, and the third was injured by the "work effort alone" in closing a water valve. Id. at 664-665.
Kane provided the following examples of non-traumatic events: the fire fighter who is overcome by heat and flames while fighting a fire, or injures his back while lifting a heavy ladder, or is injured while climbing onto the back of a fire truck to retrieve additional hose. Id. at 663. In each example, the injury is sustained as part of the stress or strain of the fireman's normal duty and thus does not qualify him for accidental disability benefits. Ibid. In contrast, Kane notes that:
... a fireman who is thrown off the roof of a building by a sudden explosion or a burst of flames suffers an injury that is not part of the strain of normal duty but rather is a consequence of an involuntary mishap involving considerable force and power. The same would be true of the fireman who is struck by a falling beam or who falls off the top step of a tall ladder. Both incidents would be viewed as traumatic events within the meaning of the statute. [Ibid.]
Simply because a correction officer may expect to be called upon to quell a jailhouse disturbance or subdue an inmate, does not mean that in doing so his injuries are "induced by the stress or strain of the normal work effort...." Ibid. The "normal" work effort of a correction officer is to carry out his or her daily routine in keeping the jail house in a normal and orderly manner. While there may be the potential he or she will be called upon to subdue an inmate, the officer does not expect his or her daily routine will normally involve being struck by an aggressive or escaping inmate.
We are convinced that petitioner's injuries during the two incidents were caused by forces entirely separate and apart *424 from the stress and strain of his normal duties. On September 26, 1980 he was either struck by a chair or collided with an inmate during a violent and unexpected incident. As to the August 1982 episode, petitioner testified that as he tried to pull the inmate's head down, everyone "went down in a pile" on top of him, causing him to strike his knee on a concrete lip. The incident went well beyond a "slip and fall." In our view, the September 26, 1980 and August 10, 1982 events are legally equivalent to the examples of traumatic events given in Kane. If being struck by a falling beam, or falling from a ladder is not part of a fireman's "normal work effort," then a jail guard being struck or thrown to the ground during a violent and involuntary altercation must be deemed beyond the "normal work effort" as well. While the events in both cases were known occupational hazards, they are beyond "the strain of normal duty" and were "involuntary mishap[s] involving considerable force and power." Ibid.
The Board cites Pushko v. Board of Trustees of Teachers' Pension, 208 N.J. Super. 141 (App.Div. 1986) (Pushko II), as supportive of its determination that Kane's first prong was not met. See also Pushko v. Bd. of Tr. of Teachers' P. & A., 202 N.J. Super. 98 (App.Div. 1985) (Pushko I). In Pushko II, we considered whether injuries sustained by a teacher during a physical altercation among students constituted a traumatic event. We held that "having to break up fistfights in a school corridor and then suffering the physical or emotional sequelae thereof are [not] part of the `stress or strain of the normal work effort' of a teacher." Id. 208 N.J. Super. at 145. We noted that while "the hazards of combat" may be part of the stress or strain of the normal work effort of a policeman or security guard, they are not part of the normal stress of a public school teacher. Ibid. Reference to the "hazards of combat" experienced by a security officer, is dictum. The court made no independent analysis, nor had it reason to, of the nature of a correction officer's normal duties, nor did it consider the examples given in Kane of "traumatic events" which we *425 find compelling. The underlying question in Pushko was whether a purely psychiatric trauma can constitute a "traumatic event" within the Kane definition. Thus the Pushko II holding has no bearing on the case before us.
We also reject the Board's determination that petitioner met voluntarily with the cause of his injuries. In Kane, the policeman who tore a wrist ligament did not suffer a traumatic event because he voluntarily subjected his wrist to injury by pounding his open palm against the handle of a steel wrench. Thus, "the injury did not originate in an involuntary exposure to a physical object...." Kane, supra, 100 N.J. at 664. Unlike the policeman in Kane (who became the victim of a source of power he himself voluntarily put in motion), petitioner here was forced to subdue the inmates because of their unexpected and violent behavior.
We reject the notion that a correction officer forfeits his right to accidental disability simply because he exposes himself to a risk of injury in the performance of his duties. If the Board is right, it is difficult to conceive a set of circumstances allowing a correction officer to recover accidental disability benefits if injured by an inmate while in the performance of his duties. We adopt the persuasive reasoning applied by the ALJ on this point:
Firemen, policemen, correction officers and similar public servants know that they will be involved in dangerous activities and they routinely create or come voluntarily to the source of their harm. If policemen did not restrain suspects, firemen did not enter burning buildings and correction officers did not quell jailhouse disturbances, they would not get hurt. They would also not be doing their jobs. Respondent's position would not merely result in poor public policy, it is not the lesson of the Kane second test.
We agree with the ALJ that the "involuntary" prong in Kane was not intended to penalize a public servant simply because the servant is doing his or her job. Indeed, N.J.S.A. 43:15A-43 requires the employee to prove that the traumatic event occurred "during and as a result of the performance of his regular or assigned duties...." To say that petitioner is not entitled to benefits because he was fulfilling his duties as a *426 correction officer essentially nullifies the statutory requirement that the traumatic event occur during an employee's regular and assigned duties. Moreover, the Board's reasoning would preclude a policeman, who is shot by a robber in flight, from recovering simply because the officer was carrying out his normal duties. It would also preclude recovery by the fireman who falls from a ladder or is hit by a beam while fighting a fire, a result which, of course, conflicts with the dictum in Kane. See 100 N.J. at 663.
Finally, finding that petitioner met voluntarily with the source of his injury during the September 26, 1980 and August 10, 1982 incidents is inconsistent with the Board's stipulation that petitioner suffered an injury as a result of a traumatic event on March 19, 1982, when he was kicked in the chest while attempting to awaken a prisoner. Petitioner's conduct in quelling the disturbances during the September 26, 1980 and August 10, 1982 incidents was no less involuntary than his conduct during the March 1982 episode.
We are also convinced that petitioner met the third prong of the Kane test: that the source of his injuries during the two incidents was a "great rush of force or uncontrollable power." As to the September 1980 incident, petitioner injured his back either as a result of being struck by a chair or by a very forceful collision with the inmate. During the altercation, petitioner experienced a "tremendous pain" in his back. The source of his injury was not his own body weight but the assaultive behavior of the resisting inmate. As to the August 10, 1982 incident, the external "rush of force" of all those involved in subduing the inmate caused petitioner to be propelled against the concrete floor. We are satisfied that the third prong of the Kane test was met as to both incidents.
The determination of the Board is reversed. We remand for the entry of an order providing for accidental disability payments to petitioner under N.J.S.A. 43:15A-43.
NOTES
[1] As to the September 26, 1980 incident, The Board found as a fact that petitioner was not struck with a chair by the inmate. We are convinced the Board's finding is unsupported by the credible evidence. See Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973). Officer Charles had a clear view of the incident and his description of petitioner being struck by a chair was uncontradicted. Petitioner's "recollection" was not inconsistent with the version given by Officer Charles. Rather, petitioner did not know what caused the "tremendous pain" although he heard a chair scraping on the floor just before he was hurt. There was no evidentiary basis for the Board to have concluded that Officer Charles' version was not accurate. In any event, whether petitioner's back injury was caused by being struck with a chair or by the collision with the inmate, we are satisfied that the injury was caused by a traumatic event.