718 A.2d 241 (1998)
315 N.J. Super. 298
Joseph DiBLASI, Petitioner-Appellant,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1998.
Decided June 23, 1998.
*242 Frank C. Babcock, for petitioner-appellant (Frank D. Angelastro, attorney; Mr. Babcock, on the brief).
Denise M. Crump, Deputy Attorney General, for respondent-respondent (Peter Verniero, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Crump, on the brief).
Before Judges PETRELLA and SKILLMAN.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denied petitioner Joseph DiBlasi's application for an accidental disability retirement pension, despite the recommendation in an initial decision of an administrative law judge (ALJ) for the grant of such disability pension. On appeal, DiBlasi argues he was totally disabled by a "traumatic event" within the contemplation of N.J.S.A. 43:15A-43 and is entitled to accidental disability retirement benefits. We agree and reverse.
It was undisputed that DiBlasi was born on August 6, 1948; that he commenced public employment and was enrolled in PERS on June 29, 1992, and that DiBlasi's last day of active service was July 14, 1992. DiBlasi was employed by the Hudson County Board of Freeholders and worked at the Meadowview Hospital in Secaucus. DiBlasi was assigned to work in the building linen department picking up soiled linen from patients of the hospital and delivering fresh linen. He was given instructions and a tour which explained how to pick up linens on his first day of work.
July 14, 1992, was DiBlasi's second day working in the linen department. Around 9:00 a.m. that date DiBlasi pushed an empty four-wheeled cart[1] to the Ward 12 linen room to pick up the soiled linen that had been used by the patients. Although the linen room door is opened with a key, it closes and locks automatically.
DiBlasi pushed the empty cart about twothirds of the way into the room and left it between the steel doors so as to prop them open while he loaded it. After the cart was fully loaded with soiled linen, DiBlasi tried to push the cart, said to weigh approximately 750 to 850 pounds when fully loaded, out of the room, but the cart would not move because the front of the cart was scraping the floor. He noticed that the front right wheel was curving at a forty-five degree angle. DiBlasi continued to push the cart completely through the door using greater force. As instructed by his co-workers, DiBlasi placed his foot against the door to prevent it from locking. When he managed to push the cart into the hallway he took his foot away from the door. The doors closed and locked, but DiBlasi's body had not completely cleared the door and the door handle struck him with force at the base of his spine. He was pushed forward six or seven inches and became pinned between the door handle and the cart.
DiBlasi screamed for help and an orderly pushed the cart away and placed DiBlasi in a chair. DiBlasi felt sharp pains at the base of his spine and the lower left side of his back radiating down his legs. He sustained three crushed disks in his lower back as a result of this incident.
It had been stipulated before the ALJ that DiBlasi was disabled as a result of the July 14, 1992 incident, and that date was his last date of employment. When DiBlasi applied for accidental disability retirement he *243 was granted only an ordinary disability retirement by the Board. His appeal from that decision was transferred to the Office of Administrative Law. After a hearing, the ALJ found that the only disputed issue was whether the injury to DiBlasi's back constituted a traumatic event within the meaning of the statute and the applicable caselaw. The ALJ concluded that DiBlasi met involuntarily with the closing automatic door which pinned him against the cart and that was the source of the harm. The ALJ also concluded that this constituted a traumatic event, and his "Initial Decision" recommended an accidental disability pension.
In rejecting the ALJ's decision the Board found that DiBlasi met with the object that was the source of the harm due to his voluntary act of removing his foot from the automatic door. The Board concluded that DiBlasi had misjudged the amount of space needed to clear the door and this unfortunately resulted in his being pushed forward into an immobile cart. The Board concluded the event was not "involuntary" under Kane v. Board of Trustees, Police & Firemen's Retirement Sys., 100 N.J. 651, 498 A.2d 1252 (1985), and that the event did not satisfy the "great rush of force or uncontrollable power" prong of the Kane test. Id. at 663, 498 A.2d 1252.
The Board's February 20, 1997 decision rejecting the ALJ's determination did not mention it, but presumably the Board's earlier determination that DiBlasi was totally and permanently disabled as the direct result of the incident entitled him to a disability pension, as had been stipulated before the ALJ, remained in effect.
We recognize that our review is of the Board's decision, not that of the ALJ. See In re Kallen, 92 N.J. 14, 20, 455 A.2d 460 (1983); In re Uniform and Administrative Procedure Rules, 90 N.J. 85, 91, 447 A.2d 151 (1982); Public Advocate Department v. Public Utilities Board, 189 N.J.Super. 491, 507, 460 A.2d 1057 (App.Div.1983). Although we recognize that in the usual case we defer to the expertise of the agency, see Gerba v. Board of Trustees, PERS, 83 N.J. 174, 189, 416 A.2d 314 (1980), the decision by PERS here is wide of the mark on the essentially undisputed and stipulated facts and the law. Deference to an agency's expertise does not require our deference to the agency's interpretation of caselaw or legal conclusions. See Mayflower Securities Co., Inc. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973).
In Kane v. Board of Trustees, Police & Firemen's Retirement Sys., supra, 100 N.J. at 663, 498 A.2d 1252, the Court gave examples of events which would not be considered traumatic within the meaning of N.J.S.A. 43:15A-43. It pointed out that a fireman voluntarily accepts such tasks as lifting a heavy ladder or injuring himself while climbing into the back of a fire truck to retrieve an additional hose as part of his routine work. The strain from these activities, while real and disabling, is not caused by a sudden force from an external object. However, the Kane Court contrasted such situations with the fireman who falls from a roof or the top of a ladder or is struck by a beam. Those risks would be encountered involuntarily and involve great force. Ibid.
The case before us is not a simple strain case or a slip and fall case. See, e.g., Ciecwisz v. Board of Trustees, Police & Firemen's Retirement Sys., 113 N.J. 180, 182, 549 A.2d 1218 (1988); Maynard v. Board of Trustees, Teachers' Pension & Annuity Fund, 113 N.J. 169, 175, 549 A.2d 1213 (1988); Gable v. Board of Trustees, PERS, 224 N.J.Super. 417, 540 A.2d 908 (App.Div. 1988), aff'd, 115 N.J. 212, 557 A.2d 1012 (1989). It is difficult to understand the Board's conclusion that a great rush of force or power was not involved when the closing automatic steel doors struck DiBlasi in the back, and hence, was not a traumatic event under Kane. See Quigley v. Board of Trustees, PERS, 231 N.J.Super. 211, 555 A.2d 642 (App.Div.1989), with respect to what constitutes a traumatic event.
We are satisfied here that the requirements of Kane have been satisfied. See Cianciulli v. Board of Trustees, PERS, 244 N.J.Super. 399, 582 A.2d 1004 (App.Div. 1990) (slip and fall down twenty foot embankment and hitting paved road with lower part of back was "traumatic event"); Duignan v. Board of Trustees, PERS, 223 N.J.Super. 208, 218, 538 A.2d 432 (App.Div.1988) (loss of vision in one eye by school custodian when bristles of broom struck him in the eye constituted *244 a "traumatic event"). Hence, we reject the Board's restrictive view of what a traumatic event is in this case and as defined by our caselaw. The fact that DiBlasi "voluntarily" removed his foot from the door as he was pushing a heavy four-wheeled linen cart through the doorway does not support a conclusion that he "voluntarily" met with "the object or matter that was the source of the harm." DiBlasi certainly did not intend to be hit in the back by the doors or their handle when he released his foot from the door. He obviously miscalculated, and may even have been negligent, but it cannot be said that he voluntarily intended the slamming doors to strike him violently in the back causing serious harm to him. The slamming upon DiBlasi's back of heavy steel doors with an automatic closing device clearly constituted "a great rush of force or uncontrollable power."
The decision of the Board of Trustees of the Public Employees' Retirement System is reversed. The matter is remanded to the Board with directions that the application filed by petitioner should be granted and that he be retired on an accidental disability retirement allowance.
NOTES
[1] The cart was about thirty-two inches wide, five feet long, and five feet high, and had a "cut-out" to put the linen into the cart.