**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3346-23

SUSAN OCHS,
COMMISSIONER, NEW JERSEY
DEPARTMENT OF BANKING
AND INSURANCE,

     Petitioner-Respondent,

v.

ROBERT W. MANIA,

     Respondent-Appellant,

and

HEIDI ANN MANIA, and
RHM BENEFITS, INC.,

     Respondents.

_____

          Argued March 16, 2026 – Decided April 15, 2026

          Before Judges Sabatino and Walcott-Henderson.

          On appeal from the New Jersey Department of Banking and Insurance.

James A. Plaisted argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; James A. Plaisted, on the briefs).

Chandra M. Arkema, Deputy Attorney General, argued the cause for respondent (Jennifer Davenport, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Chandra M. Arkema, Deputy Attorney General, on the brief).

PER CURIAM

Defendant Robert W. Mania appeals from specific sections of a May 22, 2024 final agency decision of the Commissioner of the Department of Banking and Insurance ("DOBI"), revoking his insurance license and levying a financial penalty of $16,012.50 against him for violations of the Insurance Producer Licensing Act ("IPLA"), N.J.S.A. 17:22A-40(a). Defendant argues the Commissioner erred in declining to dismiss certain counts in the administrative order to show cause ("OTSC") filed by the State on the grounds that they were barred by: (1) the expiration of the statute of limitations; (2) the doctrine of laches; and (3) the entire controversy doctrine. Defendant further argues the Commissioner misapplied the penalty framework set forth in Kimmelman v. Henckel & McCoy, 108 N.J. 123, 132 (1987), and that a proper application of those factors would have warranted substantially less draconian sanctions than those imposed on him. He also argues the Commissioner failed to properly

2

A-3346-23

apply the Rehabilitated Convicted Offenders Act ("RCOA"), N.J.S.A. 2A:168A-1 to -16. Finally, defendant asserts that the imposition of a seven-year term of license revocation is arbitrary, capricious, or unreasonable. Because we conclude the Commissioner's decision was amply supported by credible evidence in the record, we affirm.

## I.

Robert was a licensed insurance producer in New Jersey operating through RHM Benefits, Inc. ("RHM"), an entity which he co-owned with his wife, Heidi Ann Mania.[1] Robert held a fifty-one percent ownership interest, served as principal and CEO, and oversaw the company's insurance brokerage operations, while Heidi, who owned the remaining forty-nine percent interest, provided administrative support to the company. During the relevant time period, defendants were designated responsible licensed producers ("DRLPs") for RHM. Robert separately served as an elected member of the Mount Olive Township School District Board of Education ("MOBOE").

Between 2007 and 2009, Robert and his former employer, Frank Cotroneo, participated in a scheme to increase the brokerage commission rate

---

[1] For ease of reference and intending no disrespect, we refer to the parties by their first name where appropriate, given that they share the same last name.

on the MOBOE's health insurance policy, specifically by surreptitiously diverting a portion of the commission rate to Robert to reimburse him for a debt Cotroneo owed Robert. The scheme involved diverting 1% in commissions through RHM's bank account. Pursuant to this scheme, Robert received approximately twenty-one checks totaling $141,527 through RHM, which he concealed from the MOBOE by using his official position to avoid disclosure by directing the funds to his personal post office box rather than to the MOBOE.

The scheme eventually came to the attention of the United States Attorney ("U.S. Attorney") for the District of New Jersey. On July 2, 2012, Robert entered into a plea and cooperation agreement with the U.S. Attorney, under which he agreed to plead guilty to one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. Consistent with the cooperation agreement, Robert resigned from all positions with RHM effective June 30, 2012, and subsequently transferred his ownership interest in the company to Heidi, making her the sole owner.

Robert notified DOBI of Heidi's 100% ownership in RHM through licensing and regulatory filings, although he did not disclose the circumstances underlying that transfer, including his involvement in the MOBOE scheme, the pending federal charges, or the existence of the plea and cooperation agreement.

The plea agreement provided, in pertinent part:

> [The U.S. Attorney for the District of New Jersey] will accept a guilty plea from [Robert] to a one-count information . . . which charges [Robert] with, from in or about 2007 to in or about 2009, participating in a scheme to defraud the Mount Olive Township School District . . . in violation of 18 U.S.C. § 1341 and § 2 [sic].
>
> . . . .
>
> However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, [Robert] agrees that any dismissed charges and any other charges that are not time-barred . . . may be commenced against him.
>
> . . . .
>
> This agreement is limited to [the U.S. Attorney's Office] and cannot bind other federal, state, or local authorities. However, this [o]ffice will bring this agreement to the attention of other prosecuting offices, if requested to do so. . . .

Despite Robert's agreement with the U.S. Attorney's Office, both Robert and Heidi completed various renewal applications for RHM between 2012 and 2016.[2] In 2012, Robert applied for renewal of his license and that of RHM and

_____

[2] The parties completed forms entitled License Background Question History, which listed as its first question: "Has the business entity or any owner, partner, officer or director of the business entity, or member or manager of a limited liability company, been convicted of, or is currently charged with, committing

in each instance, he responded "No" to questions concerning whether he or any of RHM's officers had been charged with a crime. Similarly, between 2012 and 2017, defendants denied that RHM or any of its officers was charged with a crime. In each instance, DOBI renewed RHM's application for licensure.

Criminal Proceedings and Related State Action

On April 21, 2016, Robert pleaded guilty to mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 related to the MOBOE scheme. A week later, Robert formally notified DOBI of the criminal charges and his guilty plea pursuant to N.J.S.A. 17:22A-40(a)(18) and N.J.S.A. 17:22A-47(b).[3] Approximately one year later, on April 25, 2017, Robert was federally sentenced to three months' incarceration, three years' supervised release, and ordered to pay a $3,000 fine,

---

a crime, had a judgment withheld or deferred, which has not been previously reported to this state?"

[3]   Under N.J.S.A. 17:22A-40(a)(18), "[t]he commissioner may place on probation, suspend, revoke or refuse to issue or renew an insurance producer's license or may levy a civil penalty . . . for . . . [f]ailing to notify the commissioner within 30 days of his conviction of any crime, indictment or the filing of any formal criminal charges, or the suspension or revocation of any insurance license or authority by a state." Additionally, N.J.S.A. 17:22A-47(b) requires that "[w]ithin 30 days of the initial pretrial hearing date, an insurance producer shall report to the commissioner any criminal prosecution of the producer taken in any jurisdiction."

a $100 special assessment, and $403,912 in restitution to the MOBOE and the Office of Morris County Counsel.

On May 10, 2017, the New Jersey Office of the Attorney General, Division of Criminal Justice, filed an OTSC and complaint in the trial court, seeking forfeiture of Robert's public office, permanent disqualification from future public employment, and forfeiture of his pension and retirement benefits on the ground that his mail fraud conviction related to his position on the MOBOE.

During the pendency of the OTSC, Robert again sought to renew his insurance producer license. DOBI denied the application on October 18, 2017, citing his conviction and the need for a federal waiver under 18 U.S.C. § 1033, and notified Robert of his right to request a hearing to contest its decision. No hearing was ever requested.

<u>Administrative Enforcement and Agency Adjudication</u>

On April 7, 2022, DOBI filed an OTSC against Robert, Heidi, and RHM, seeking to revoke Robert's insurance producer license, impose civil penalties, and recover investigative and prosecution costs related to his alleged violations of IPLA arising from his criminal conduct as noted in the federal conviction. The OTSC included the following claims:

7

Count One: [Robert] failed to notify the Commissioner of the criminal prosecutions against him within thirty (30) days, in violation of N.J.S.A. 17:22A-40(a)(18) and N.J.S.A. 17:22A-47;

Count Two: [Robert] pleaded guilty to and was convicted of Mail Fraud, 1:1 felony, and failed to notify the Commissioner within thirty (30) days of the conviction of Mail Fraud, in violation of N.J.S.A. 17:22A-40(a)(2), (6), (7), (8), and (16), and further, following his conviction of a felony in the fourth degree or higher, failed to obtain a waiver from the Commissioner to be employed in the business of insurance in this State as required by N.J.A.C. 11:17E-1.3 and 18 U.S.C. § 1033(e)(2);

Count Three: By engaging in and admitting to the scheme to defraud the Mount Olive Township School District, for which [Robert pleaded] guilty and was convicted of Mail Fraud, a class 3 felony, and which scheme was conducted through RHM, [Robert] and RHM violated N.J.S.A. 17:22A-40(a)(2), (4), (6), (7), (8), and (16); and during the timeframe [Robert] and RHM engaged in the aforementioned scheme, Heidi was an active officer and a [DRLP] of RHM, and therefore individually responsible for the insurance-related conduct of RHM, pursuant to N.J.A.C. 11: 1-12.2, and therefore additionally liable for the violations of N.J.S.A. 17:22A-40(a)(2), (4), (6), (7), (8), and (16); and

Count Four: By failing to report [Robert]'s criminal prosecution on RHM's April 25, 2016 application to renew its producer license, [defendants] violated N.J.S.A. 17:22A-40(a)(l), (2), (4), (8), and (16) and N.J.S.A. 17:22A-47(b).

A-3346-23

Following defendants' denial of all the allegations and request for a hearing, the matter was transmitted to the Office of Administrative Law ("OAL") as a contested case, pursuant to N.J.S.A. 52:14B-1 to -15 and N.J.S.A. 52:14F-1 to -13.

On May 10, 2023, DOBI moved for summary decision in the OAL, arguing no genuine issues of material fact existed as to Robert's federal conviction, the underlying scheme, and the licensing violations. Defendants opposed DOBI's motion and crossed-moved for summary decision in their favor, which DOBI opposed. Neither party requested an evidentiary hearing. Accordingly, no live testimony was presented.

The ALJ's Decision

On January 8, 2024, following oral argument, an administrative law judge ("ALJ") issued an initial decision granting summary decision in DOBI's favor on all four counts of the OTSC. The ALJ first concluded that Robert's reporting obligation was triggered upon his awareness of the impending charges, requiring notice within thirty days of executing the plea agreement, not the filing of formal charges, and determined that DOBI proved the violation by a preponderance of the credible evidence.

The ALJ next found that Robert's undisputed mail fraud conviction established a crime involving dishonesty, supporting discipline under N.J.S.A. 17:22A-40(a)(2), (6), and (7), and determined that his failure to obtain a waiver and continued licensure warranted a finding that DOBI proved the violation by a preponderance of the credible evidence.

As to count three, the ALJ determined that the undisputed evidence established Robert's participation in a commission-inflation and concealment scheme and rejected defendants' characterization of his role as minimal, concluding that DOBI proved violations of N.J.S.A. 17:22A-40(a)(2), (4), (6), (7), (8), and (16), and that Heidi was individually liable for RHM's conduct based on her ownership interest and role under the applicable regulations.

As to count four, the ALJ determined that defendants' repeated denials on renewal applications constituted a violation of N.J.S.A. 17:22A-40(a)(1) with respect to the April 25, 2016 application submitted after Robert was formally charged.

After addressing liability under each count, the ALJ rejected defendants' affirmative defenses and denied their cross-motion for summary decision. The ALJ next evaluated the appropriate penalty under the factors set forth in

10

Kimmelman.[4]  Applying those factors, the ALJ recommended revocation of the insurance producer licenses of Robert, Heidi, and RHM.  In particular, the ALJ held:

> [DOBI] has shown by a preponderance of credible evidence the failure of respondents to comply with the laws established to protect the public.  [Robert] participated in a scheme to overcharge commissions and prevent disclosure of such commissions to his client, and all three respondents benefited from that scheme.  [DOBI] is well within his statutory authority to demand the revocation of respondents' licenses.
>
> The Commissioner may levy penalties against any person violating any provision of [IPLA] not exceeding $5,000 for the first offense and not exceeding $10,000 for each subsequent offense and may order reimbursement of the costs of investigation and prosecution. N.J.S.A. 17:22A-45(c).

The ALJ recommended a total civil penalty of $20,000, assessed jointly and severally, pursuant to N.J.S.A. 17:22A-45(c).  Finally, the ALJ recommended defendants reimburse DOBI's investigative costs in the amount of $1,612.50.  Defendants appealed and both parties filed timely exceptions to the ALJ's initial decision.

---

[4] The specific factors outlined in Kimmelman will be discussed in greater detail in this opinion, infra.

Following a review of the ALJ's initial decision, and after considering the parties' exceptions and replies, the DOBI Commissioner issued a thorough and well-reasoned sixty-page final agency decision and order, adopting most of the findings and determinations set forth in the ALJ's initial decision, except as noted. More particularly, the Commissioner rejected the liability under count one (failure to notify), expanded liability under count two (mail fraud conviction and failure to timely report that conviction) to include subsections (8) and (16) of N.J.S.A. 17:22A-40(a) (engaging in dishonest practices and committing fraudulent acts), and rejected the ALJ's determination that DOBI proved Robert also violated N.J.A.C. 11:17E-1.3 and 18 U.S.C. § 1033(e)(2) (failure to obtain a waiver to engage in the business of insurance following a criminal conviction).

The Commissioner substantially adopted the ALJ's findings as to count three (engaging in fraud and misrepresentation, sharing commissions with an unlicensed person, conviction of a crime involving dishonesty, dishonest practices, and committing fraudulent acts in connection with the insurance commission scheme). The Commissioner, however, rejected the ALJ's findings of liability as to count four (making materially false or misleading statements in a license application), concluding no disclosure obligation or statutory violation

had been established as to Heidi and RHM, pursuant to N.J.S.A. 17:22A-40(a)(2), (4), (8), and (16), or N.J.S.A. 17:22A-47(b).

The Commissioner revoked Robert's insurance producer license after considering the factors outlined in N.J.S.A. 45:1-21.5,[5] including "the nature and seriousness of the crime," "the relationship of the crime or offense to the purposes of regulating the profession," evidence of rehabilitation, and the relationship of the offense to Robert's fitness "required to perform the duties and discharge the responsibilities of the profession or occupation regulated by the entity."   Although the Commissioner acknowledged some evidence of rehabilitation, he concluded that Robert's participation in the commission-inflation scheme "casts doubt upon his ability to meet the high standards that insurance producers are expected to meet," thus warranting revocation.

---

[5]  N.J.S.A. 45:1-21.5 provides in pertinent part:

> [A]n entity shall not disqualify a person from obtaining or holding any certificate, registration or license issued by an entity solely because the person has been convicted of or engaged in acts constituting any crime or offense, unless the crime or offense has a direct or substantial relationship to the activity regulated by the entity or is of a nature such that . . . licensure of the person would be inconsistent with the public's health, safety, or welfare.

As for Heidi and RHM, rather than revocation, the Commissioner imposed a six-month license suspension based on his determination that Heidi "was a passive actor, and played no part in Robert's fraud." Additional penalties included a $10,000 civil penalty jointly and severally against Robert, Heidi, and RHM. The Commissioner explained that these penalties were appropriate because the respondents "benefited financially from the scheme" and the sanctions "demonstrate the appropriate level of opprobrium for such misconduct, and will serve to deter future misconduct by [defendants] and the industry as a whole." The Commissioner also ordered defendants to be jointly and severally liable for $1,612.50 in investigative costs.

Defendants appealed, challenging the licensing revocation and penalties imposed under counts two and three of the OTSC, raising the following points for our consideration:

> POINT I
>
> THE STATUTE OF LIMITATIONS BARS COUNT III OF THE [ORDER TO SHOW CAUSE].
>
> POINT II
>
> LACHES SHOULD BAR BOTH COUNTS II AND III.

14                                                    A-3346-23

POINT III

THE ENTIRE CONTROVERSY DOCTRINE SHOULD BAR COUNTS II AND III Of THE [ORDER TO SHOW CAUSE].

POINT IV

THE [KIMMELMAN] DOCTRINE WARRANTS [JUDGMENT] FOR [MANIA] AND A REVERSAL OF THE REVOCATION ORDER.

POINT V

THE [RCOA] WARRANTS AT LEAST A REMAND FOR TRIAL IF NOT SUMMARY JUDGMENT FOR [MANIA] BECAUSE THE DIVISION PROVIDED NO EVIDENCE TO REBUT THE EVIDENCE OF MANIA'S REHABILITATION.

POINT VI

SUMMARY [JUDGMENT] ON THE MERITS AS TO COUNTS II AND III OF THE [ORDER TO SHOW CAUSE] AS TO MR. MANIA IS APPROPRIATE ON ALL AFFIRMATIVE DEFENSES.

POINT VII

ISSUES ON APPEAL.

## II.

We generally review final agency decisions, not administrative law judges' initial decisions, on a limited basis. See DiBlasi v. Bd. of Trs., 315 N.J. Super. 298, 301 (App. Div. 1998); In re Dennis, 385 N.J. Super. 369, 375 (App.

15

Div. 2006). When an agency's final determination is based on the ALJ's findings of fact and credibility, we customarily defer to those determinations. See Burlington Bd. of Soc. v. G.W., 425 N.J. Super. 42, 47 (App. Div. 2012).

We generally "recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." McKnight, 476 N.J. Super. at 162 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). An agency decision is arbitrary and capricious if it is unconstitutional, violates legislative policies, is unsupported by substantial evidence in the record, or could not reasonably have been made on a showing of the relevant factors. A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009).

A reviewing "court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413,

16

422 (2008). "Substantial credible evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." In re Application of Howard Sav. Inst., 32 N.J. 29, 52 (1960). On matters of fact, the court gives "due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).

"[A]ppellate review of an agency's choice of sanction is limited." Zahl, 186 N.J. at 353. Although appellate courts must give "substantial deference" to an agency's fact-finding and expert judgment, Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011), they are not bound by an agency's interpretation of law, including its interpretation of statutes or prior judicial decisions. Hemsey, 198 N.J. at 223; see also Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). Moreover, as our Supreme Court stated in a recent opinion, although we have "not always been consistent about what standard of review applies to an agency's interpretation of a statute it is charged with enforcing," we "do not attempt to reconcile our conflicting case law, . . . [when] our decision . . . would be the same regardless of whether we deferred to [an agency's] interpretation of [a statute] or reviewed the statute de novo." In re P.T. Jibsail Fam. L.P. Tidelands License No. 1515-06-0012.1 Tdi 190001, ___ N.J. ___, ___ (2026).

Accordingly, "[a] reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)). Because appellate courts defer to the agency's decisions, reviewing courts should consider "whether such punishment is 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" Polk, 90 N.J. at 578 (quoting Pell v. Bd. of Educ., Etc., 34 N.Y.2d 222, 233 (1974)).

III.

Applying that standard, we conclude the Commissioner's decision to revoke Robert's license and impose penalties and sanctions is supported by substantial credible evidence in the record. We thus affirm the Commissioner's decision, which appropriately modified certain portions of the ALJ's initial decision, substantially for the reasons expressed in the Commissioner's comprehensive and well-reasoned written opinion. We amplify our opinion to address the key issues raised by defendants and to further explain the basis for our decision.

18

Defendants primarily challenge the grant of summary decision on counts two and three of the OTSC, which concerned Robert's failure to comply with statutory reporting deadlines and licensing requirements following his federal mail fraud conviction. They argue that summary decision was improper because count three is barred by the statute of limitations as DOBI did not initiate enforcement until April 2022, even though it became aware of Robert's criminal conduct years earlier. Further, they maintain the discovery rule did not toll the limitations period because DOBI "sat on [its] rights" before issuing the OTSC, and therefore contend the action is barred by laches and the entire controversy doctrine.

Defendants further contend that summary decision on count two was improper because Robert notified DOBI of his federal conviction and complied with the law by refraining from engaging in the insurance industry following his conviction and sentence.

In addressing these arguments, the Commissioner correctly noted that "[f]ormal charges were not filed against Robert until April 21, 2016 when the U.S. [A]ttorney filed the Criminal information." The Commissioner thus rejected the ALJ's determination that Robert violated N.J.S.A. 17:22A-40(a)(18) (failing to notify of conviction, indictment, filing of formal charges, suspension

or revocation of license in another state), and N.J.S.A. 17:22A-47(b), which obligates licensed producers to report any criminal prosecution of the producer to the Commissioner within thirty days on the initial hearing date.

Here, there is no dispute as to when the formal charges against Robert were filed and that Robert made his report regarding those charges within the thirty-day timeframe. We therefore have no quarrel with the Commissioner's proper exercise of his authority to reject the ALJ's determination and his ultimate conclusion based on the plain language of N.J.S.A. 17:22A-40(a)(18) and N.J.S.A. 17:22A-47(b). This statute permits the Commissioner to "place on probation, suspend, revoke or refuse to issue or renew an insurance producer's license" for "[f]ailing to notify the [C]ommissioner within 30 days of his conviction of any crime . . . ." N.J.S.A. 17:22A-40(a)(18).

Similarly, we defer to the Commissioner's modification of the ALJ's determination as to count two (mail fraud conviction). Relying on Robert's allocution, the Commissioner found that Robert participated in the insurance commission inflation scheme and used his position on the MOBOE to conceal disclosures that would have revealed the inflated five-percent commissions. On this basis, the Commissioner upheld violations of N.J.S.A. 17:22A-40(a)(2) (violating any insurance law or regulation), (6) (convicted of a felony or crime

20

of the fourth degree or higher), and (7) (committing any insurance unfair trade practice or fraud). However, the Commissioner further modified the ALJ's decision to conclude that Robert also violated subsection (8) (using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility) and (16) (any fraudulent act) because his concealment of the annual disclosures through his office at the MOBOE "demonstrates unworthiness and was a dishonest practice." As to subsections (8) and (16), we are persuaded the Commissioner's modifications and additional findings are wholly supported by the record and the applicable law.

Additionally, we have no quarrel with the Commissioner's unapplied findings that Robert did not violate N.J.A.C. 11:17E-1.1 to -1.7 ("waiver rule")[6], because there was no evidence that he engaged in the business of insurance after his conviction and therefore no need for him to obtain the Commissioner's written consent before resuming such activity. The Commissioner found persuasive that the waiver rule did not require Robert to relinquish his license

---

[6] "No person having been convicted of a felony involving breach of trust or dishonesty or having been convicted under 18 U.S.C. § 1033 shall be employed in the business of insurance in this State in any capacity without having first obtained a waiver from the Commissioner or his or her designee" N.J.A.C. 11:17E-1.4(a).

following his conviction, but only to obtain a waiver before engaging in the business of insurance. We also note that the record shows that Robert was not engaged in the business of insurance following his April 2017 sentence and resulting three-month term of incarceration. Accordingly, we are satisfied that the Commissioner's rejection of the ALJ's determination that Robert violated the waiver rule was neither arbitrary, capricious, nor unreasonable.

## A.

The Commissioner found count three timely because, under the discovery rule, the cause of action did not accrue until 2016. See N.J.S.A. 2A:14-1.2(a) ("any civil action commenced by the State shall be commenced within ten years next after the cause of action shall have accrued"). The statute measures the limitations period from the accrual of the cause of action rather than from the date of the underlying misconduct. Ibid. Under the appropriate circumstances, the discovery rule may delay accrual until the injured party discovers, or reasonably should have discovered, the facts giving rise to the claim. Lopez v. Swyer, 62 N.J. 267, 272 (1973).

The discovery rule provides that a cause of action does not accrue "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable

22

claim." Id. at 272. In applying the rule, the relevant inquiry is whether a party learns or reasonably should learn "the existence of that state of facts which may equate in law with a cause of action." Burd v. N.J. Tel. Co., 76 N.J. 284, 291 (1978). The doctrine is rooted in equity and is designed "to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations." Catena v. Raytheon Co., 447 N.J. Super. 43, 53 (App. Div. 2016) (quoting Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426 (1987)). The party invoking the discovery rule bears the burden of establishing the equitable basis for its application. Vispisiano, 107 N.J. at 426.

Defendants argue the claims are time-barred because the conduct occurred between 2007 and 2009 and DOBI knew of it by 2016, making the 2022 action untimely. That argument misapprehends the discovery rule, which concerns when the cause of action accrued under N.J.S.A. 2A:14-1.2(a), not whether DOBI later had sufficient time to sue after learning of the underlying facts.

The Commissioner found that DOBI first became aware of Robert's conduct in April 2016, when an investigator first learned of the federal criminal proceedings from reading news articles, which the Commissioner determined caused the claim to accrue at that time. DOBI issued the OTSC in April 2022, which the Commissioner correctly determined fell within the ten-year

limitations period. Under these circumstances, applying the discovery rule was consistent with its equitable purpose of preventing a wrongdoer from benefitting from concealed misconduct. See Lopez, 62 N.J. at 273-74.

The Commissioner rejected defendants' argument that DOBI forfeited its claim by waiting until 2022 to file the enforcement action after learning of the conduct in 2016, explaining we have not extended the "reasonable time" limitation from Burd to regulatory enforcement proceedings of this type, particularly where the delay caused no prejudice or evidentiary disadvantage. Moreover, the party asserting a statute of limitations defense bears the burden of showing the limitations period has expired, which defendants failed to establish here given the undisputed discovery and filing dates. See Presslaff v. Robins, 168 N.J. Super. 543, 546 (App. Div. 1979).

Accordingly, the Commissioner's finding that DOBI timely commenced the enforcement action within the ten-year limitations period, N.J.S.A. 2A:14-1.2(a), is supported by sufficient credible evidence and consistent with the law.

B.

The Commissioner further concluded that laches did not bar counts two and three because the enforcement action was filed within the applicable ten-

year statute of limitations and defendants failed to demonstrate actual prejudice resulting from any delay.

Laches arises from "the neglect, for an unreasonable and unexplained length of time . . . to do what in law should have been done." Lavin v. Hackensack Bd. of Educ., 90 N.J. 145, 151 (1982) (quoting Atl. City v. Civil Serv. Comm'n, 3 N.J. Super. 57, 60 (App. Div. 1949)). The doctrine bars relief when the delaying party had ample opportunity to bring a claim, and the party invoking the doctrine was acting in good faith in believing that the delaying party had given up on its claim. Knorr v. Smeal, 178 N.J. 169, 181 (2003); Lavin, 90 N.J. at 152. Laches therefore applies when a party unreasonably delays in asserting its rights, and the opposing party relies in good faith in believing that the right has been abandoned. See Dorchester Manor v. Borough of New Milford, 287 N.J. Super. 163, 171-72 (Law Div. 1994), aff'd, 287 N.J. Super. 114 (App. Div. 1996). "The core equitable concern in applying laches is whether [the opposing] party has been [unfairly] harmed by the delay." Knorr, 178 N.J. at 181 (citing Lavin, 90 N.J. at 152-53).

Robert argued that the matter should be dismissed on the basis of laches because of loss of income and the prejudice he suffered due to DOBI's "long inexplicable delay." However, the Commissioner determined that the alleged

delay did not hinder the availability of evidence and witnesses and therefore did not establish the type of prejudicial delay required to invoke laches, particularly where both parties sought summary decision based on an undisputed factual record. We agree with the Commissioner that the doctrine did not warrant dismissal of counts two and three.

C.

Similarly, the Commissioner found that the entire controversy doctrine, R. 4:30A, did not bar DOBI's enforcement action because the administrative proceeding was distinct from the prior Law Division matter arising from Robert's criminal conviction. The Commissioner reiterated the point made by the ALJ, namely that "the adjudication of a legal controversy should occur in one litigation in only one court."

The entire controversy doctrine generally requires the parties to an action to raise all transactionally related claims in that action. It is an equitable preclusion doctrine that "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." Olds v. Donnelly, 150 N.J. 424, 431 (1997). As our Supreme Court explained, "[t]he entire controversy doctrine 'seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman &

Stahl, P.C., 237 N.J. 91, 98 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)).  The doctrine generally disfavors successive suits regarding the same controversy.  See DiTrolio v. Antiles, 142 N.J. 253, 267 (1995).

Application of the entire controversy doctrine "is left to judicial discretion based on the factual circumstances of individual cases."  Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (quoting Oliver v. Ambrose, 152 N.J. 383, 395 (1998)).  As such, "the polestar for the application" of the doctrine is "judicial fairness," Dimitrakopoulos, 237 N.J. at 114 (quoting K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74 (2002)), and "a court must apply the doctrine in accordance with equitable principles, with careful attention to the facts of a given case."  Ibid.

The doctrine should not be applied "where to do so would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency."  Ibid. (quoting K-Land, 173 N.J. at 70).  When analyzing fairness, "courts should consider fairness to the court system as a whole, as well as to all parties."  Id. at 115 (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)).

A-3346-23

Defendants argue that both the administrative and Law Division proceedings arose from the same transaction surrounding Robert's federal conviction, and that DOBI should have pursued relief in a single action. They further assert the ALJ failed to adequately distinguish the circumstances of this matter from the facts presented in other cases, such as <u>Hackensack v. Winner</u>, 82 N.J. 1 (1980), which recognized the doctrine's application in administrative proceedings.

The Commissioner justifiably declined to apply the entire controversy doctrine because the prior Law Division action and this administrative proceeding involved different statutory schemes and distinct authority. The Law Division action sought forfeiture of Robert's public office and related penalties under N.J.S.A. 2C:51-2, whereas this matter concerns DOBI's exclusive authority to regulate and discipline insurance producers. As the Commissioner noted, DOBI "has the power to suspend or revoke insurance producer licenses, not the Superior Court." N.J.A.C. 17:22A-40(a).

He also rejected reliance on <u>Winner</u>, which involved overlapping administrative jurisdiction, emphasizing that no such overlap exists here and that the doctrine must be applied cautiously in administrative settings. Because the proceedings arise from distinct statutory frameworks and fairness did not

require joinder, the doctrine does not bar DOBI's action. We decline to disturb these findings and affirm for the reasons expressed in the Commissioner's opinion. R. 2:11-3(e)(1)(D).

IV.

Defendants argue the penalties imposed on them were excessive and the license revocation was unwarranted. They assert the Commissioner misapplied the Kimmelman[7] factors because Robert "was prosecuted, convicted, and sentenced based on the same facts set forth by the Division," paid "$403,000 in forfeitures and restitution and $3,000 more in fines," and "was imprisoned for three months," which they contend already prevented him from "practic[ing] his profession and earn[ing] a living with his insurance license from April 2016 forward." They further argue that DOBI effectively imposed an additional punishment when it "made the practical suspension more permanent by denying him the right to even apply for a renewal of his license."

The Commissioner assessed each Kimmelman factor. Pursuant to his finding that DOBI proved counts two and three, he concluded that Robert acted

___

[7]  Kimmelman established that an agency assessing civil penalties should consider the following seven factors: good faith or bad faith; the ability to pay; the amount of profits obtained from the illegal activity; injury to the public; duration of the illegal activity or conspiracy; existence of criminal actions; and past violations. 108 N.J. at 137-39.

in bad faith by increasing commissions and using his official position with the MOBOE "to intercept and conceal disclosures which would have alerted the [Mount Olive Township School District] that it was paying a higher commission rate." The Commissioner did not overlook Robert's ability to pay, but assigned neutral weight to that factor given the lack of affirmative evidence demonstrating the inability to satisfy the outstanding penalties.

The Commissioner further found that Robert benefitted financially from the scheme because RHM received twenty-one commission checks totaling $141,527, even though the precise amount retained by Robert was unclear, and thus the third factor supported a higher penalty. While the total commissions received by RHM provided some indication of financial gain, the absence of specific findings regarding how much of those funds Robert personally retained limits the weight that the third factor originally possessed. Regardless, when viewed in the context of all of the remaining factors, we are unconvinced that the Commissioner's consideration of this factor produced a disproportionate or unjust result warranting our intervention. R. 2:10-2.

In addition, the Commissioner reasonably agreed with the ALJ and maintained that Robert "took advantage of his position to enrich himself and his company," and that maintaining "public faith in insurance producers" required

30

levying these sanctions. The Commissioner found DOBI proved the approximately two-year scheme constituted an injury to the public and warranted a higher penalty. A greater civil penalty was also warranted for Robert and RHM because they were subject to a prior regulatory consent order, but the factor did not apply to Heidi as she was not party to that order. In mitigation, the Commissioner considered that Robert had already been criminally prosecuted and punished. He concluded this favored a lesser penalty. Although the sixth factor mitigated in Robert's favor, the Commissioner was not required to treat the prior criminal sanctions as dispositive, but rather permissibly weigh them against the remaining factors.

The Kimmelman factors supported the license revocation and fines imposed here. The Commissioner aptly noted his decision was driven by the "duty to protect the public welfare and to instill public confidence in both insurance producers and the industry as a whole." Thus, we discern no error warranting reversal.

V.

Defendants next argue the RCOA should protect Robert from losing his professional license following his criminal conviction because, as he puts it, his "rehabilitation warrants summary judgment." However, the Commissioner

31

correctly concluded that the RCOA is inapplicable here, stating that it "applies to an application for a license, not the revocation of an existing license."

Under N.J.S.A. 45:1-21.5, a licensing authority may not deny an application based solely on a criminal conviction unless the offense bears a direct or substantial relationship to the regulated profession or licensure would be inconsistent with the public health, safety, or welfare. In making that determination, the licensing authority must consider: (1) "the nature and seriousness of the crime" and the time elapsed since its commission; (2) "the relationship of the crime . . . to the purposes of regulating the profession or occupation regulated by the entity"; (3) "any evidence of rehabilitation of the person" since the conviction; and (4) "the relationship of the crime . . . to the ability, capacity, and fitness required to perform the duties and discharge the responsibilities of the profession or occupation regulated by the entity." N.J.S.A. 45:1-21.5(a). The RCOA, which applies more generally to all "State, county or municipal department[s], board[s], officer[s] or agenc[ies]," largely tracks the requirements of this provision. N.J.S.A. 2A:168A-2.

Applying the above standards, we discern no basis to disturb the Commissioner's conclusion that RCOA does not shield Robert from the sanctions imposed against him. The administrative proceeding was not based

32

on Robert's existing criminal conviction alone, but rather on the underlying scheme and violations of IPLA, all of which demonstrated his unfitness to continue practicing in the insurance industry. Even if rehabilitation evidence were considered, the Commissioner still found that Robert's underlying conduct bore a direct relationship to the honesty, trustworthiness, and fitness required of an insurance producer. We therefore conclude that the RCOA did not preclude revocation of Robert's insurance producer license.

In sum, we are satisfied that the Commissioner's final agency decision is based on substantial credible evidence in the record, conforms with the applicable law, and is thus not arbitrary, capricious, or unreasonable. R. 2:11-3(e)(1)(D). To the extent we have not addressed an issue raised by defendant, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division